UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY,<br><br>   Plaintiff,<br><br>   v.<br><br>QUINTANA HOMEOWNERS ASSOCIATION, et al.,<br><br>   Defendants. | Case No. 5:17-cv-00693-EJD<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR STAY PROCEEDINGS**<br><br>Re: Dkt. No. 21 |

## I.  INTRODUCTION

Plaintiff Great American Insurance Company ("GAIC") initiated this declaratory relief action seeking a judicial determination that it does not owe Defendants Quintana Homeowners Association ("Quintana HOA") and James Gregg ("Gregg") a duty to defend or indemnify in the underlying suit entitled <u>GIBCO Partners, LLC v. Quintana Homeowners Association, et al.</u>, currently pending in the Monterey County Superior Court.  Presently before the Court is Quintana HOA's motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P., or to stay the proceedings pending resolution of the underlying state court action.   Defendant Gregg has filed a joinder. The motion is scheduled for hearing on August 17, 2017.  The Court finds it appropriate to take the matter under submission for decision without oral argument pursuant to Civil Local Rule 7-1(b).  For the reasons set forth below, Defendants' motion to dismiss or to stay the action is denied.

## II. BACKGROUND

A. Underlying Action

The plaintiff in the underlying action, GIBCO Partners, LLC ("GIBCO Partners"), is the purchaser of "Lot 10," a 91.5 acre plot of land located within a 2070 acre development in Carmel Valley known as Quintana. Prior to purchasing the property, GIBCO Partner's manager, Jonathan Gibson ("Gibson") reviewed Quintana's Covenants, Conditions and Restrictions ("CC&Rs"), the Design Guidelines of Quintana, and the maps of the Quintana lots contained in each of these documents. Based upon the information contained therein, Gibson determined that the "building envelopes" (the area of each lot in Quintana in which all residential improvements must be built), could only be changed in one of three specified ways: (1) the Architectural Review Board ("ARB") could make the changes without formally amending the Design Guidelines if certain findings were made; (2) the ARB could make changes if it received the vote or written consent of no less than seventy-five percent (75%) of the Quintana HOA; or (3) the developer, Twelfth Tee, could make changes.

On January 30, 2008, prior to purchasing Lot 10, Gibson had a telephone conversation with Gregg, who is identified in the complaint as a developer of Quintana with an ownership interest in Twelfth Tee, a member of the Quintana HOA Board from 2003-2011, and a member of the ARB from approximately 2003-2013.[1] Based on this conversation, Gibson believed that Gregg was the key person to contact at Quintana to obtain information and guidance about whether he should purchase Lot 10. GIBCO Partners allege that it reasonably relied upon the information Gregg provided, as well as the representations in the CC&Rs, the Design Guidelines and maps, in concluding that Lot 10 would provide Gibson and his family the privacy they desired, when it decided to purchase Lot 10 for $2.75 million on February 28, 2008.

GIBCO Partners alleges that the information Gregg provided was false and misleading.

---

[1] In the Amended Revised Sixth Amended Complaint, which was filed in Monterey County Superior Court after the instant motion to dismiss or stay was filed, Gregg is also identified as a "volunteer" for the HOA in connection with the sales of various lots in Quintana from 2007-2008.

Case No.: 5:17-cv-00693-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR STAY PROCEEDINGS

2

Further, GIBCO Partners alleges that throughout 2009, 2010 and 2011, the Quintana HOA and ARB allowed multiple violations of the CC&Rs to exist on eight of the thirteen lots in the Quintana development, including among other things, building envelope violations. GIBCO Partners alleges that it notified the ARB and the Quintana HOA of the violations, and was promised that the CC&Rs would be enforced. The Quintana HOA and ARB, however, allegedly failed to fulfill their promise. Instead, in approximately June of 2012, the Quintana HOA president asked the lot owners to approve a series of amendments to the Design Guidelines which would eliminate several of the violations, and the ARB promised to approve a few of the violations for some of the lot owners if those lot owners voted to approve the Design Guideline revisions. Ultimately, the amendments to eliminate several of the longstanding violations received enough votes to pass, and the ARB approved most of the remaining violations.

Based on the foregoing, GIBCO Partners alleges the following causes of action in its Amended Revised Sixth Amended Complaint[2] pertinent to the instant insurance coverage action: breach of contract against the Quintana HOA for failure to enforce the CC&Rs and Design Guidelines, for which it seeks injunctive relief and an award of attorney's fees; fraud and negligent misrepresentation against Gregg, acting in the capacity of "a volunteer on behalf of the HOA," for which it seeks damages, including punitive damages, as well as attorney fees; violation of California Corporations Code §§8320, 8321, 8333 against the Quintana HOA, for which it seeks injunctive relief and attorney fees; violation of the Davis-Stirling Act, California Civil Code §§1363, 1363.05, 1365 and 1363.840, for which it seeks injunctive relief and attorney fees; and declaratory relief against the Quintana HOA with respect to an alleged building envelope violation on Lot 11, and attorney fees. By order of the Monterey County Superior Court filed June 25, 2015, GIBCO Partners is precluded from recovering monetary damages from the HOA.[3]

---

[2] GAIC acknowledges receipt of the Amended Revised Sixth Amended Complaint. In GAIC's view, the new allegations in this pleading do not alter its coverage position as outlined in its complaint or in its opposition brief to the instant motion to dismiss or stay proceedings.
[3] GAIC's Request for Judicial Notice of the Superior Court's order is granted.

B. The Coverage Action

According to GAIC's complaint, Quintana HOA and Gregg (hereinafter collectively referred to as "Insureds") are presently receiving a defense in the underlying action from Quintana HOA's primary insurer, Travelers Casualty and Surety Company of America ("Travelers") under a primary liability insurance policy issued to Quintana HOA ("Travelers Policy"), the limits of which have not been exhausted. GAIC initiated the instant action seeking a judicial declaration that it will have no obligation under the umbrella liability policy it issued to the Quintana HOA ("Umbrella Policy"), to defend and indemnify the Quintana HOA and Gregg in the underlying action upon the exhaustion of the Travelers Policy.

The GAIC Umbrella Policy provides "Claims Made Coverage" for the coverage period of September 21, 2011 to September 21, 2012, and contains a limit of $5 million for each occurrence and a $5 million general aggregate limit. The GAIC Umbrella Policy provides "follow form umbrella coverage" over Quintana HOA's primary policies, such as the Travelers Policy.

In the present declaratory relief action, GAIC seeks confirmation that it owes no defense and indemnity to the Insureds on the following grounds:

> 10. As it relates to Quintana [HOA], the Underlying Action seeks only injunctive and declaratory relief. Since the Underlying Action does not assert a claim for damages, and there is no coverage under the Great American Umbrella Policy for the cost of complying with injunctive or other equitable relief, there is no covered Loss alleged in the Underlying Action from which a defense or indemnity obligation can arise in the event the applicable limit of the Travelers Policy is exhausted.
>
> \* \* \*
>
> 12. Although Gregg also served as a developer-appointed member of the "pre-turnover" Board of Directors of Quintana, the alleged representation was made when he was not a member of Quintana's Board of Directors. Under such circumstances, exclusions contained or incorporated in the Great American Umbrella Policy bar coverage for the alleged acts or omissions of Gregg. Consequently, Great American can have no obligation with respect to the defense or indemnity of Gregg in the Underlying Action in the event the applicable limit of the Travelers Policy is exhausted.

GAIC Complaint, ¶¶10, 12. More specifically, with respect to Gregg, GAIC alleges that it has no

Case No.: 5:17-cv-00693-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR STAY PROCEEDINGS
4

obligation to defend and indemnify "based on the application of the Builder, Developer or Sponsor Wrongful Act exclusion" contained in the GAIC Umbrella Policy and/or Claims Against Builder/Developer exclusion contained in the Travelers Policy. The GAIC Builder, Developer or Sponsor exclusion provides as follows:

> **Builder, Developer or Sponsor Wrongful Act**
> Any "wrongful act" which is directly or indirectly related in whole or in part to actual or alleged 'wrongful act' on the part of a builder, developer or sponsor or anyone affiliated with a builder, developer or sponsor. This exclusion shall not apply to claims while such an "Insured" is a member on the "Insured's board of directors and in the capacity of such.
>
> As used in this endorsement, "wrongful act" means any actual or alleged error, misstatement, misleading statement, act or omission, neglect or breach of duty.

The Travelers Policy exclusion for Claims Against Builder/Developer states as follows:

> 1. For purposes of this endorsement, the following terms have the following meanings:
>    a. "Builder/Developer Board Member" means any person appointed or elected to serve on the board of directors of the Parent Organization by the builder, developer or sponsor of the Parent Organization, and who was both a director or officer of the Parent Organization and a director, officer, employee or agent of such builder, developer, or sponsor of the Parent Organization;
>    b. "Policy Year" means each year of the Policy Period beginning with the Policy Inception Date and ending one year thereafter and each successive year until canceled or non-renewed.
>
> 2. The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against any Builder/Developer Board Member after the end of the Policy Year in which such Builder/Developer Board Member ceases to serve on the board of directors of the Parent Organization.

See GAIC Complaint, ¶32.

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed if it fails to state a claim upon which relief can be granted. In deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). In considering a motion

Case No.: 5:17-cv-00693-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR STAY PROCEEDINGS
5

United States District Court
Northern District of California

1  pursuant to Rule 12(b)(6), the court must accept as true all "well-pleaded factual allegations."

2  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009). The court must also construe the

3  alleged facts in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242,

4  1245 (9th Cir. 1988). "[T]o survive a motion to dismiss, a complaint must contain sufficient

5  factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Iqbal, 556

6  U.S. at 678 (internal citations omitted); see also Fed.R.Civ.P. 8(a).

## IV. DISCUSSION

### A. Motion to Dismiss

The Insureds contend that GAIC's complaint fails to state a claim upon which relief may be granted because the GAIC Policy clearly requires GAIC to defend and indemnify. The Insureds raise essentially four arguments to support coverage. First, the Insureds contend that the underlying complaint alleges numerous "wrongful acts" within the meaning of the GAIC Policy: "errors, misstatements, misleading statements, acts, omissions, neglects, and breaches of duty in the way [the Quintana HOA] allegedly did not follow the CC&Rs or Design Guidelines, has neglected to provide the sublime, pastoral residential community that was allegedly promised to GIBCO, failed to produce records and meeting minutes, thereby violating the Davis-Stirling Act, among other wrongful acts." Defendants' Motion, pp.13-14. Second, the Insureds contend that the Policy does not exclude claims for injunctive relief. Rather, the Insureds construe the GAIC Policy as requiring only that a "claim" be made for a "wrongful act." Third, the Insureds contend that the requests for attorney fees accompanying the state law claims for injunctive relief are compensable "Losses," and that the term "damages" in the GAIC Policy should be construed in favor of the insured to include attorney fees. Fourth, the Insureds contend that with respect to Gregg, the underlying state court complaint now identifies him as a "volunteer," and therefore the Builder/Developer exclusion does not apply.

The Insureds' various substantive arguments do not support dismissal under Rule 12(b)(6), Fed.R.Civ.P. With respect to the Insureds' first argument, GAIC's complaint for declaratory relief is not predicated upon the absence of a "claim" or "wrongful act" in the underlying state court

Case No.: 5:17-cv-00693-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR STAY PROCEEDINGS

6

action. Instead, GAIC alleges that the state law claims for injunctive and declaratory relief do not constitute a covered "Loss" within the meaning of the GAIC Umbrella Policy.

The Insureds' second argument with respect to injunctive relief similarly fails. GAIC's position is that the cost of complying with an injunction is barred from coverage under the Cost of Injunctive Relief Exclusion in the Travelers Policy, which "follows form" to the Travelers Policy. See GAIC's Opposition, p. 14. The Travelers Policy Cost of Injunctive Relief Exclusion provides as follows:

> The Insurers shall not be liable to make any payment for Loss, other than Defense Costs, in connection with any Claim made against any of the Insureds which constitute costs and expenses incurred or to be incurred to comply with an order, judgment or award of injunctive or other equitable relief of any kind, or that portion of a settlement encompassing injunctive or other equitable relief. . . .

See GAIC's Opposition, p. 9.

The Insureds' third argument regarding coverage for prevailing party attorney fees is also unavailing. Under the GAIC Policy, a compensable "Loss" is defined as follows:

> the total amount excess of the applicable Retention which any Insured becomes legally obligated to pay as the result of all Claims first made against any Insured during the Policy Period for Wrongful Acts including, but not limited to, damages (including punitive or exemplary damages where insurable under applicable law), judgments, settlements and Defense Costs. . . .

See GAIC's Opposition, p.8. "Defense Costs" are defined as "that part of Loss consisting of "reasonable costs, charges and expenses (including but not limited to attorney fees) incurred in defending or investigating Claims, including appeals therefrom." Although "Loss" includes "attorney fees," the "attorney fees" must have been "incurred in defending or investigating Claims." An award of attorney fees as a prevailing party falls outside the scope of insurable "Loss." As for the Insureds' alternative argument that attorney fees are a form of damages, GAIC contends that California law is to the contrary, citing <u>Cutler-Orosi Unified School District v. Tulare County School Dist.</u>, 31 Cal.App.4th 617, 632 (1994). Thus, GAIC's position is not

Case No.: 5:17-cv-00693-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR STAY PROCEEDINGS
7

foreclosed by California law.

Lastly, the Insureds contend that with respect to Gregg, the underlying state court complaint now identifies him as a "volunteer," and therefore the Builder/Developer exclusion does not apply. GAIC's allegations, however, are sufficient at the pleading stage. GAIC alleges as follows:

> 42. Great American seeks a declaration that it can have no obligation to defend and indemnify Gregg under the Great American Umbrella Policy based on the application of the Builder, Developer or Sponsor Wrongful Act exclusion contained in the [Umbrella] Policy and/or the Claims Against Builder/Developer exclusion contained in the Travelers Policy. Given that Gregg was no longer serving as a developer-appointed member of Quintana's Board of Directors on January 30, 2008, which is the date of the telephone call during which the alleged misrepresentation was made, one or both of the exclusions apply to bar coverage for Gregg.

See GAIC's Complaint, ¶42. The GAIC Builder/Developer exclusion bars coverage for any wrongful act "which is directly or indirectly related in whole or in part to actual or alleged 'wrongful act' on the part of the . . . developer . . . or anyone affiliated with a builder, developer or sponsor," except "while such an 'Insured' is a member on the 'Insured's' board of directors and in the capacity as such." Id. at ¶25. The Travelers Builder/Developer exclusion similarly bars coverage for a developer-appointed board member of Quintana where a claim is made "after the end of the Policy Year" in which the developer-appointed board member "ceases to serve on the board of directors" of Quintana. GAIC's allegations must be accepted as true at the pleading stage (see Ashcroft v. Iqbal, 556 U.S. at 1950) and are sufficient to state a claim for declaratory relief. Accordingly, the Insureds' motion to dismiss is denied.

B. Motion to Stay

In general, a stay of a declaratory action to determine insurance coverage is appropriate when the coverage question turns on facts to be litigated in the underlying action. Montrose Chemical Corp. v. Superior Court, 6 Cal.4th 287, 301-302 (1983). In this case, however, GAIC's positions with respect to the defense and indemnity of Quintana HOA and Gregg largely turn on policy interpretation. The Insureds identify two categories of potential factual overlap between the issues to be resolved in the underlying state court action and the present case; however, the

Case No.: 5:17-cv-00693-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR STAY PROCEEDINGS
8

potential overlap is not a sufficient basis to delay this case. The Insureds first contend that there remain factual issues regarding the "nature of relief" available in the underlying action. The Monterey County Superior Court, however, has already determined that "the only relief Plaintiff may seek in this action as against the HOA is injunctive." See Monterey County Superior Court Order filed June 25, 2015. Second, the Insureds contend that there remain unresolved issues with respect to the nature of Gregg's relationship with the Quintana HOA and the developer entities. The GAIC contends, however, that it has already been established that Gregg was no longer a member of Quintana's board at the time he allegedly made misrepresentations, which is the only evidence needed to determine the applicability of the Builder/Developer exclusion. Therefore, a stay of the instant action is unwarranted. See GGIS Ins. Serv., Inc. v. Superior Court (Capitol Indem. Corp.), 168 Cal.App.4th 1493, 1505 (2008).

## V. CONCLUSION

For the reasons set forth above, GAIC has pled sufficient facts upon which relief may be granted. Accordingly Defendants' motion to dismiss or stay the proceedings is DENIED. Nothing in this Order should be construed as a decision on the underlying merits of the coverage issues.

**IT IS SO ORDERED.**

Dated: August 11, 2017

EDWARD J. DAVILA
United States District Judge

Case No.: 5:17-cv-00693-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR STAY PROCEEDINGS
9