Linda Bondi Morrison, Esq., SBN 210264
Ryan B. Luther, Esq., SBN 216928
TRESSLER LLP
2 Park Plaza, Suite 1050
Irvine, California 92614
Telephone: (949) 336-1200
Fax: (949) 752-0645
E-Mail: lmorrison@tresslerllp.com
rluther@tresslerllp.com

Attorneys for Plaintiff Great American Insurance Company

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

GREAT AMERICAN INSURANCE COMPANY,

Plaintiff,

v.

QUINTANA HOMEOWNERS ASSOCIATION and JAMES GREGG,

Defendants.

---

QUINTANA HOMEOWNERS ASSOCIATION,

Counterclaimant,

v.

GREAT AMERICAN INSURANCE COMPANY,

Counter-Defendant.

Case No. 5:17-cv-693-EJD
Honorable Edward J. Davila

**GREAT AMERICAN INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

Date: February 22, 2018
Time: 9:00 a.m.
Courtroom: 4

**TO THIS HONORABLE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

Please take notice that on February 22, 2018, at 9:00 a.m., or as soon thereafter as this matter may be heard in Courtroom 4 of the above-entitled Court, located in the Robert F. Peckham Federal Building & United States Courthouse, 280 South 1st Street, Room 2112, San Jose, California, 95113, Plaintiff Great American Insurance Company ("Great American") will and hereby does move the Court for an order granting summary judgment , or in the alternative, partial summary judgment, in its favor and against Defendant Quintana Homeowners Association ("HOA") and Defendant James Gregg ("Gregg") pursuant to Rule 56 of the Federal Rules of Civil Procedure.

This motion is made on the grounds that there is no genuine issue of material fact and neither the HOA nor Gregg can raise a genuine issue of material fact as to the absence of any potential for excess coverage under the policy of insurance issued by Great American to the HOA for the claims asserted against the HOA and Gregg in the underlying action. In the event the Court concludes that summary judgment is not appropriate as to one or more Defendants, claims, causes of action or portions thereof, Great American requests, in the alternative, that partial summary judgment be entered as to any Defendant, claim, cause of action or portion thereof for which the court finds there to be no genuine issue of material fact.

This motion is based on this Notice; the Memorandum of Points and Authorities attached hereto; the Moving Separate Statement and the Request for Judicial Notice filed herewith, along with the pleadings on file in this action; and upon such further evidence as the Court permits.

Dated: December 19, 2017

TRESSLER LLP

*/S/ Linda Bondi Morrison*

By: ______________________________

Linda Bondi Morrison, Esq.
Ryan B. Luther, Esq.
Attorneys for Plaintiff Great American Insurance Company

**TABLE OF CONTENTS**


**I. INTRODUCTION AND SUMMARY OF ARGUMENT ....... 1**

**II. FACTUAL BACKGROUND ....... 2**

A. THE *GIBCO* ACTION ....... 2

1. The *GIBCO* Complaint ....... 2

2. Gregg's Deposition Testimony ....... 9

B. DEFENSE OF THE LITIGATION AND TENDER TO GREAT AMERICAN ....... 9

C. THE DECLARATORY RELIEF ACTION ....... 9

**III. THE POLICIES ....... 10**

A. THE TRAVELERS PRIMARY POLICY ....... 10

B. THE GREAT AMERICAN UMBRELLA POLICY ....... 12

**IV. STANDARD FOR SUMMARY JUDGMENT ....... 13**

**V. ARGUMENT ....... 14**

A. PRINCIPLES OF POLICY INTERPRETATION ....... 14

B. GREAT AMERICAN'S OBLIGATIONS, IF ANY, CANNOT ATTACH UNTIL THE APPLICABLE LIMIT OF THE TRAVELERS PRIMARY POLICY HAS BEEN EXHAUSTED ....... 15

C. THE DUTY TO DEFEND UNDER CALIFORNIA LAW ....... 16

D. THE *GIBCO* ACTION DOES NOT ASSERT A CLAIM AGAINST THE HOA FOR A COVERED "LOSS," AND AS SUCH, NO EXCESS DEFENSE OR INDEMNITY OBLIGATION CAN ARISE UNDER THE GREAT AMERICAN UMBRELLA POLICY ....... 17

1. An Award of Prevailing Party Attorney's Fees Does Not Constitute a Covered "Loss" under the Great American Umbrella Policy ....... 17

2. Claims for Injunctive and Declaratory Relief Are Not Claims for Covered "Loss" under the Great American Umbrella Policy ....... 19

3. Even in the Event of Primary Exhaustion, there can be No Duty to Defend Absent a Claim for a Covered "Loss" ....... 20

E. THE DEVELOPER WRONGFUL ACT EXCLUSION ELIMINATES ANY DEFENSE OR INDEMNITY OBLIGATION TO GREGG UNDER THE GREAT AMERICAN UMBRELLA POLICY IN THE EVENT OF PRIMARY EXHAUSTION ....21

F. COVERAGE FOR GREGG IS ALSO BARRED UNDER THE TRAVELERS PRIMARY POLICY'S CLAIMS AGAINST BUILDER/DEVELOPER EXCLUSION ....22

**VI. CONCLUSION ....23**

# TABLE OF AUTHORITIES

**CASES**

*Big 5 Corp. v. Gulf Underwriters Ins. Co.*, 2003 WL 22127029, (C.D. Cal. 2003)-- 18, 19, 20, 21

*British Airways Board v. Boeing Co.*, 585 F.2d 946 (9th Cir. 1978) cert. denied, 440 U.S. 981, 99 S. Ct. 1790 (1979)---------------- 14

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 2552 (1986) ---------------------------------------------------- 13

*Century Surety Co. v. United Pacific Ins. Co.*, 109 Cal. App. 4th 1246 (2003)------------------------------------------------------------------- 15

*Cutler-Orosi Unified School District v. Tulare County School Dist. Liability/Property Self-Insurance-Authority*, 31 Cal. App. 4th 617 (1994)------------------------------------------------------------------ 17, 18

*Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106 (1995) ------------------------------------------------------------------ 16

*Haering v. Topa Ins. Co.*, 244 Cal. App. 4th 725 (2016) ------------------------------------------------------------------- 15

*Health Net v. RLI Ins. Co.*, 206 Cal. App. 4th 232, 256-257 (2012)---------------------------------------------------- 17, 18

*MacKinnon v. Truck Ins. Exchange*, 31 Cal. 4th 635 (2003) ------------------------------------------------------------------------- 14

*Montrose Chem. Corp. v. Superior Court (Canadian Universal Ins. Co.)*, 6 Cal. 4th 287 (1993)---------------------------------------------------------------------------- 16

*Screen Actors Guild Inc. v. Federal Ins. Co.*, 957 F. Supp. 2d 1157 (C.D. Cal. 2013) ("*SAG*") ------------------------------------------------- 18

*Screen Actors Guild-American Federation of Television and Radio Artists v. Federal Ins. Co.*, 636 Fed. Appx. 409, 410 (9th Cir. 2016) ------------------------------------------------------- 18

*Shy, et al. v. Insurance Co. of the State of Penn.*, 528 Fed. Appx. 752 (9th Cir. 2013)-------------------------------------------------------- 14, 22

*Signal Cos. v. Harbor Ins. Co.*, 27 Cal. 3d 359 (1980) --------------------------------------------------------------------------- 16

*Vandenberg v. Superior Court (Centennial Ins. Co.)*, 21 Cal. 4th 815 (1999) ------------------------------------------------------------------------- 19

**STATUTES**

California Civil Code § 1639------------------------------------------------------------------ 14

Federal Rules of Civil Procedure, Rule 56 -------------------------------------------------------- 13

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

In this action, Plaintiff Great American Insurance Company ("Great American") seeks declaratory relief to confirm that it has appropriately denied any duty to defend or indemnify Defendants Quintana Homeowners Association ("HOA") and James Gregg ("Gregg") in the Superior Court of California, County of Monterey action styled *GIBCO Partners, LLC v. Quintana Homeowners Ass'n, et al.,* Case No. M 114311 ("*GIBCO* Action") under Great American Umbrella and Excess Liability Insurance Policy No. UM2388452 ("Great American Umbrella Policy"). The *GIBCO* Action addresses real estate disputes between Plaintiff GIBCO Partners, LLC ("GIBCO"), as the purchaser of an individual residential lot within a Carmel Valley, California real estate development known as Quintana, against two entities involved in Quintana's development, the HOA as Quintana's homeowners association, and Gregg as one of the owners of the developer entities, who also initially served on the HOA's Board of Directors.

By this Motion, Great American seeks summary judgment as to its claims for declaratory relief with respect to its alleged duties to defend and indemnify the HOA and Gregg in the *GIBCO* Action under the Great American Umbrella Policy in the event of the exhaustion of the applicable limit of the underlying primary Directors & Officers liability policy issued by Travelers Casualty and Surety Company of America ("Travelers") to the HOA ("Travelers Primary Policy"). Great American was informed and believed that the applicable limit of the Travelers Primary Policy may exhaust to defend and/or indemnify the HOA and/or Gregg in the *GIBCO* Action, and as such, Great American filed this action to secure a declaration of its rights and obligations before any performance could have otherwise become due under the Great American Umbrella Policy.

Summary judgment can be entered as a matter of law against the HOA because, as a result of orders issued by the Superior Court of California, County of Monterey in the *GIBCO* Action, the operative complaint filed therein seeks only declaratory relief, injunctive relief, and an award of prevailing party attorney fees, none of which would constituted a covered "Loss" under the Great American Umbrella Policy for which a defense or indemnity could be owed upon the exhaustion of the

applicable limit of the Travelers Primary Policy. Absent a claim for a covered "Loss," Great American can have no duty to defend or indemnify the HOA in the *GIBCO* Action.

Great American is also entitled to summary judgment against Gregg as a matter of law because coverage is barred by the application of two exclusions contained in and incorporated by the Great American Umbrella Policy. The clear application of both exclusions to bar coverage is established by reference to undisputed extrinsic evidence obtained through Gregg's deposition in the *GIBCO* Action, as well as a judicial admission of fact contained in his answer to Great American's Complaint for Declaratory Relief ("Declaratory Relief Complaint") filed herein. Specifically, both exclusions apply to the claims asserted against Gregg in the *GIBCO* Action because Gregg, a developer-appointed board member of the HOA, was no longer serving in that capacity when the alleged misrepresentations forming the basis for his alleged liability in the *GIBCO* Action took place, or when the Travelers Primary Policy and the Great American Umbrella Policy incepted.

Great American's position with respect to its alleged excess defense and indemnity obligations is based on the conspicuous, plain, clear and enforceable language of the Great American Umbrella Policy. Neither the HOA nor Gregg can raise a genuine disputed issue of material fact as to Great American's alleged duties to defend and indemnify them in the *GIBCO* Action. Therefore, Great American respectfully requests the entry of summary judgment in its favor, and against the HOA and Gregg, confirming that Great American has no obligations with respect to their defense and indemnity in the *GIBCO* Action under the Great American Umbrella Policy.

## II. FACTUAL BACKGROUND

### A. The *GIBCO* Action

#### 1. The *GIBCO* Complaint

GIBCO filed its initial complaint to commence the *GIBCO* Action in the Superior Court of California, County of Monterey, in September 2011, asserting claims relating to GIBCO's purchase of real property known as "Lot 10" within the 2070 acre, thirteen-parcel residential development known as Quintana. The initial complaint has been amended and revised numerous times, and has been the subject of multiple pleadings motions and orders thereon. On or about April 13, 2017, GIBCO filed

the operative Amended Revised Sixth Amended Complaint ("*GIBCO* Complaint"[1]) against the HOA; Gregg; and Twelfth Tee Investors, LLC and Golf Properties Associates, LLC (collectively, "Developer Entities"). [Moving Separate Statement, Undisputed Fact No. 1 ("MSS 1").] After Great American filed its Declaratory Relief Complaint, GIBCO obtained leave to file the operative *GIBCO* Complaint in order to add allegations that Gregg was acting as a "volunteer" for the HOA. The purpose of these new allegations, which appear to contradict other allegations in the *GIBCO* Complaint that Gregg was receiving substantial compensation from the HOA at the time, is unclear, but does not impact Great American's rights or obligations.

As it pertains to the HOA, the *GIBCO* Complaint asserts causes of action for (1) Breach of Contract; (5) Violation of California Corporations Code Sections 8320, 8321, and 8333; (6) Violations of the Davis-Stirling Act, California Civil Code Sections 1363, 1363.05, 1365 and 1363.840; and (7) Declaratory Relief. [Request for Judicial Notice ("RJN") Ex. 2, ¶¶ 104-116 and 142- 151. The *GIBCO* Complaint does not, and by order of the Superior Court of California, County of Monterey, cannot, assert a claim for damages against the HOA. [MSS 9-11.] Rather, the only relief sought in the *GIBCO* Complaint as against the HOA is injunctive relief, declaratory relief and an award of prevailing-party contractual and/or statutory attorney fees. [MSS 12.] As it pertains to Gregg, the *GIBCO* Complaint asserts causes of action for (2) Fraud – Intentional Misrepresentation, and (4) Negligent Misrepresentation. [RJN Ex. 2, ¶¶ 117-125 and 134-141.] The *GIBCO* Complaint contains the following allegations relevant to this Motion:

**THE PARTIES**

* * *

> 4. At all relevant times herein the QUINTANA HOMEOWNERS ASSOCIATION ("the HOA") was a California nonprofit corporation organized under the laws of California for the purpose of administering and enforcing the Declaration of Covenants, Conditions and Restrictions ("CC&R's") for Quintana. …
>
> 5. At all times relevant herein, Defendant JAMES GREGG ("GREGG") was

[1] Great American notes that the GIBCO Complaint was filed in "redline" format, reflecting revisions from previously-filed versions of the pleading. For ease of reference, the excerpts contained in this Motion include only the allegations currently pled in the GIBCO Complaint, without reflecting the changes from previous versions of the pleading.

and is an individual and a developer of Quintana with an ownership interest in TWELFTH TEE and GOLF PROPERTIES. At all times relevant herein, GREGG was the managing member of GOLF PROPERTIES which, as heretofore stated, is the managing member of TWELFTH TEE.

6. GREGG served on the HOA Board from approximately 2003-2011, and GREGG served on Quintana's Architectural Review Board (the "ARB") from approximately 2003-2013. For most of this time, GREGG served as chair of the ARB, and he controlled many of the functions of the ARB. … At various times relevant to this complaint, including the time period of 2007 and 2008, if not actually a member of the HOA, GREGG served as a volunteer for the HOA in connection with the sales of various lots in Quintana.

7. Plaintiff is informed and believes and on that basis alleges that from approximately 2003 until approximately March 2008, GREGG or TWELFTH TEE was paid a substantial monthly fee by the HOA to manage Quintana. …

* * *

**GIBCO CONSIDERS PURCHASING A LOT IN QUINTANA**

35. Jonathan Gibson ("Gibson") is the manager of GIBCO. …

* * *

51. On January 30, 2008, Gibson called GREGG, and they had a lengthy telephone conference during which Gibson asked GREGG many questions about Lot 10, including, among other things, how GREGG was currently involved with Quintana, how GREGG became involved, what should Gibson know about Lot 10, what should Gibson know about Quintana, and what did GREGG recommend that Gibson do before purchasing and later developing Lot 10. During this conversation, GREGG was acting as a "volunteer" on behalf of the HOA in an effort to keep prices of re-sale lots as high as possible.

52. Early in the conversation, Gibson also told GREGG he had reviewed the Design Guidelines, the CC&R's and promotional materials, and he was impressed with the land use values and goals of Quintana. This comment was in the context of Gibson expressing to GREGG his family's desire for privacy in a land purchase. Gibson also told GREGG about his family's residence in New Jersey, and how important it was to the Gibsons that the lot they were considering purchasing be in a place where they would not be able to see their neighbors' homes nor to be seen by their neighbors.

53. GREGG willingly engaged in the conversation with Gibson and volunteered information regarding Quintana as more fully set forth herein.

54. In response to Gibson's comments regarding the philosophy of Quitana [*sic*], GREGG told Gibson the following: (1) that GREGG was one of the developers of Quintana, and that he had been on the HOA board and was currently serving on the ARS

(which was responsible for approving all development within Quintana); (2) that he was still the part owner of one of the lots in Quintana (i.e., Lot 13); (3) that he had been responsible for a "development" in Pebble Beach that had been very successful; (4) that he personally had spent months working with a land use architect to identify the building envelopes and to develop the Design Guidelines; (5) that as a result of his experience with every aspect of Quintana, GREGG would help Gibson locate architects and builders and aid Gibson in obtaining the necessary building and grading permits from Monterey County as he had earlier done much the same for TWELFTH TEE and knew the key people to contact in the County and how to make a successful presentation.

55. Based on the above statements, Gibson formed the belief that GREGG was in fact the key person to contact at Quintana in terms of obtaining information and guidance about whether or not he should purchase Lot 10 in that development. Gibson was reasonable in forming that belief and in relying upon the statements made by GREGG based upon Allen's referral of Gibson to GREGG as the person most knowledgeable about Quintana, GREGG's own statements to Gibson throughout the conversation about GREGG's prominent role in the development of Quintana, and his expressed detailed knowledge about Quintana in general and about Lot 10 in particular.

* * *

57. GREGG told Gibson that because the building envelope for Lot 11 was located so close to Los Laureles Grade, it could only allow for the construction of a one story residence thereon. GREGG's statement was false and misleading because GREGG knew that he had, through the ARB, permitted a building envelope on Lot 11 to be moved so as to deprive Lot 10 of most of its privacy only seven months earlier in June of 2007, as more fully described in paragraphs 27-34.

* * *

**GIBCO PURCHASES LOT 10 BASED ON REPRESENTATIONS MADE IN PROMOTIONAL MATERIALS PUBLISHED BY TWELFTH TEE AND GREGG AND BASED ON FRAUDULENT REPRESENTATIONS AND MATERIAL OMISSIONS MADE BY GREGG TO GIBSON IN THE TELEPHONE CONVERSATION OF JANUARY 30, 2008**

* * *

65. On or about February 25, 2008, as a proximate result of the false representations made by GREGG to Gibson in their January 30, 2008 telephone call, GIBCO purchased the Lot 10 from Rancho Quintana Ten, LLC (Lessee), for the purchase price of $2.75 million.

* * *

70. Had Gibson known that the representations alleged herein were false and misleading, GIBCO would never have purchased Lot 10.

* * *

**FIRST CAUSE OF ACTION – BREACH OF CONTRACT**

[Against the HOA]

108. The CC&R's and Design Guidelines contain definite and certain terms requiring the HOA to enforce violations thereof by homeowners. The HOA has failed and refused to enforce several requirements of the CC&R's and Design Guidelines, as set forth at length herein, resulting in numerous breaches of the CC&R's and Design Guidelines.

109. Because the subject matter of this dispute involves the impairment of real property, which is unique in character, a remedy at law is inadequate. Therefore, an order compelling specific performance of the HOA's obligations under the CC&R's and Design Guidelines is necessary and appropriate to implement the reasonable expectations of the parties.

110. The CC&R's provide that the prevailing party in an action to enforce the CC&R's shall be entitled to recover reasonable attorneys' fees and costs.

* * *

116. As a result of the HOA's violations of the CC&R's and Design Guidelines, GIBCO has suffered damages which are an inadequate measure of recovery as a matter of law, thus making injunctive relief appropriate. Additionally, GIBCO has incurred attorney's fees, in an amount according to proof.

* * *

**SECOND CAUSE OF ACTION—FRAUD—INTENTIONAL MISREPRESENTATION**

**[Against the GREGG, TWELFTH TEE, and GOLF PROPERTIES]**

* * *

118. GREGG (acting as a volunteer on behalf of the HOA, as agent for TWELFTH TEE and GOLF PROPERTIES), TWELFTH TEE, and GOLF PROPERTIES (collectively, the "Fraud Defendants") made representations to GIBCO that facts set forth herein were true.

119. The Fraud Defendants' representations were false.

120. The Fraud Defendants knew that the representations were false when they made them, or they made the representations recklessly and without regard for their truth.

121. The Fraud Defendants intended GIBCO to rely on the representations.

122. GIBCO reasonably relied on the Fraud Defendants' representations.

123. GIBCO was harmed and suffered damages in an amount according to proof.

124. GIBCO's reliance on the Fraud Defendants' representations was a substantial factor in causing GIBCO's harm.

125. In doing the things herein alleged, the Fraud Defendants acted with fraud, oppression or malice and with the intent to cause injury to GIBCO, thereby warranting punitive damages in an amount appropriate to punish the Fraud Defendants and deter others from engaging in similar misconduct.

* * *

**FOURTH CAUSE OF ACTION—NEGLIGENT MISREPRESENTATION**

**[Against the GREGG, TWELFTH TEE, and GOLF PROPERTIES]**

134. GIBCO hereby realleges and incorporates by reference the allegations in paragraphs 1 though 103 and paragraph 118 as though fully set forth in this cause of action.

135. The Fraud Defendants made representations to GIBCO that facts set forth herein were true.

136. The Fraud Defendants' representations were false. In making the false representations, the fraud defendants acted recklessly, with gross negligence, and with a conscious flagrant indifference to the rights of GIBCO.

137. Although the Fraud Defendants may have honestly believed that the representations were true, the Fraud Defendants had no reasonable grounds for believing the representations were true when they made them.

138. The Fraud Defendants intended GIBCO to rely on their representations.

139. GIBCO reasonably relied on the Fraud Defendants' representations.

140. GIBCO was harmed and suffered damages in an amount according to proof.

141. GIBCO's reliance on the Fraud Defendants' representations was a substantial factor in causing GIBCO's harm.

* * *

**FIFTH CAUSE OF ACTION – VIOLATION OF CALIFORNIA CORPORATIONS**

[Against the HOA]

* * *

142. GIBCO hereby realleges and incorporates by reference the allegations in paragraphs 1-8; 11-14; and 95-99 as though fully set forth in this cause of action.

143. On July 22, 2009, August 18, 2009, August 26, 2009, September 4, 2009, and September 24, 2009, GIBCO and/or its agents or representatives made written requests to review the minutes of past meetings of the HOA Board and the ARB.

144. Upon information and belief, despite requests on numerous occasions, the HOA has not provided GIBCO with copies of all HOA Board or ARB meeting minutes. Thelander has confirmed there are minutes and other records missing from the meetings of the HOA Board and the ARB.

145. The HOA has not provided the required reports and notifications.

* * *

**SIXTH CAUSE OF ACTION-VIOLATION OF THE DAVIS-STIRLING ACT, CALIFORNIA CIVIL CODE SECTIONS 1363, 1363.05, 1365 and 1363.840**

[AGAINST THE HOA]

* * *

147. GIBCO has requested copies of the minutes of the meeting of the ARB and/or HOA during which Lot 11's building envelope relocation request was approved and to date has not received copies or access to the records. GIBCO has attempted to meet and confer with the HOA Board regarding this issue on numerous occasions starting in 2009, and to date, and after initially being told no such records existed, then GIBCO received a disk with several records in approximately May 2011, but not the records requested.

148. The HOA has failed to provide required notices and reports.

* * *

**SEVENTH CAUSE OF ACTION – DECLARATORY RELIEF**

[Against the HOA]

* * *

150. An actual controversy has arisen and now exists relating to the rights and duties of the parties herein in that GIBCO contends that the purported moving of the building envelope on Lot 11 was done without compliance with the requirements of the CC&R's and Design Guidelines, and the purported relocation violated the CC&R's and Design Guidelines and has no effect, whereas the HOA contends there have been no violations.

151. As a result of these controversies, GIBCO seeks a judicial determination

of the parties' rights, obligations and duties.

[RJN Ex. 2.]

**2. Gregg's Deposition Testimony**

Gregg's deposition in the Underlying Action was taken on September 29 and 30, 2016. Gregg's deposition testimony confirmed, in relevant part, that he was one of the initial members of the Board of Directors of the HOA, but was no longer serving in that capacity in 2008, when the telephone discussion at issue occurred. [MSS 30.]

**B. Defense of the Litigation and Tender to Great American**

Travelers defended both the HOA and Gregg, through separate defense counsel, in the Underlying Action under the Travelers Primary Policy, a "burning limits" policy under which the payment of defense fees and costs reduces the applicable limits of insurance. [MSS 2-4.] Counsel for the HOA and Gregg requested that Great American agree to indemnify the HOA and Gregg under the Great American Umbrella Policy for the amount of any judgment or settlement in the Underlying Action that might exceeds the applicable remaining limit of the Travelers Primary Policy. [MSS 6, 21.] After conducting its initial investigation, and its review of documents produced and information obtained through discovery in the Underlying Action, including the testimony referenced above from Gregg's deposition transcript, Great American issued letters on February 2, 2017, denying any obligations with respect to the defense and indemnity of the HOA and Gregg in the Underlying Action in the event of primary exhaustion. [MSS 7, 22.] Counsel for the HOA and Gregg have disputed Great American's position with respect to excess coverage under the Great American Umbrella Policy. [MSS 8, 23.]

**C. The Declaratory Relief Action**

Shortly after declining coverage, Great American filed its Declaratory Relief Complaint (Dkt. 1) on February 10, 2017, seeking judicial confirmation of its coverage position while the HOA and Gregg continued to receive a defense under the Travelers Primary Policy. As alleged in Paragraph 17 of the Declaratory Relief Complaint, "[a]lthough Gregg served as a developer-appointed 'pre-turnover' member of the Board of Directors for the HOA, at the time of the January 30, 2008

telephone call that serves as the basis for the claims asserted by GIBCO against him, he was no longer serving as a director or officer of [the HOA]." [RJN Ex. 3, ¶ 17.] Gregg filed his Answer to the Declaratory Relief Complaint on or about April 24, 2017. [RJN Ex. 6.] In response to Paragraph 17, Gregg's Answer states, "[t]his defendant admits that he was a member of the Board of Directors and an officer for [the HOA], but he did not hold such positions as of January 30, 2008; he was, however, a member of the Quintana Architectural Review Board at that time." [MSS 31, RJN Ex. 6, ¶ 17.] Consequently, there is no dispute that Gregg served as a developer-appointed member of the HOA's Board of Directors, but was no longer serving in that capacity when the January 30, 2008 telephone discussion took place. [MSS 28-31.]

## III. THE POLICIES

### A. The Travelers Primary Policy

Travelers, as the HOA's primary liability insurer, has defended the HOA and Gregg in the *GIBCO* Action under the Travelers Primary Policy, a Non-Profit Management and Organization Liability Insurance Policy No. 104116804, effective November 7, 2010 to November 7, 2013 ("Travelers Primary Policy"). [MSS 2, 4.] As reflected in its Declarations, the Travelers Primary Policy contains a $2 million maximum aggregate Limit of Liability (Inclusive of Defense Costs) for all Claims first made in the Policy Period. [MSS 3.] As a former board member of the HOA, and a member of its "duly constituted committee," the Architectural Review Board, at the time of the January 30, 2008 telephone call, Gregg qualifies as an "Insured Person," and therefore an "Insured" under the Travelers Primary Policy with respect to the claims asserted against him in the *GIBCO* Action. [MSS 19.] If, as now alleged in the *GIBCO* Complaint, Gregg also served as a "volunteer" for the HOA at the time of the telephone call, this would serve as an additional basis for his "Insured Person" and "Insured" status under the Travelers Primary Policy. [MSS 19.]

The Travelers Primary Policy contains the following Liability Coverage Insuring Agreement relevant to Great American's alleged obligations under the Great American Umbrella Policy:

**Liability Coverage**

A. The Insurer will pay on behalf of the Insureds Loss up to the available maximum aggregate Limit of Liability set forth in Item 3 of the Declarations

> which is incurred by the Insureds as the result of any Claim first made against the Insureds during the Policy Period or the Discovery Period, if purchased, for a Wrongful Act.

[RJN Ex. 5, Page 23.]

**Defense Coverage**

> B. The Insurer shall have the right and duty to defend any Claim covered by this Policy, even if any of the allegations are groundless, false or fraudulent. The Insurer's duty to defend shall cease upon the exhaustion of the Limit of Liability set forth in Item 3 of the Declarations.

[RJN Ex. 5, Page 6.]

The Travelers Primary Policy defines "Loss" to mean, in relevant part, the total amount "any Insured becomes legally obligated to pay as the result of all Claims first made against any Insured during the Policy Period for Wrongful Acts including, but not limited to, damages (including punitive or exemplary damages where insurable under applicable law), judgments, settlements and Defense Costs." [MSS 14.] The Travelers Primary Policy defines "Wrongful Act" to mean "any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed or attempted, or allegedly committed or attempted," by the HOA or one or more Insured Persons "in their representative capacities as such." [MSS 15.]

The Travelers Primary Policy also contains an endorsement setting forth the following exclusion ("Cost of Injunctive Relief Exclusion"):

> The Insurer shall not be liable to make any payment for Loss, other than Defense Costs, in connection with any Claim made against any of the Insureds which constitute costs and expenses incurred or to be incurred to comply with an order, judgment or award of injunctive or other equitable relief of any kind, or that portion of a settlement encompassing injunctive or other equitable relief… .

[MSS 16.]

The Travelers Primary Policy also contains an endorsement setting forth the following definitions and exclusion ("Claims Against Builder/Developer Exclusion"):

> 1. For purposes of this endorsement, the following terms have the following meanings:
>
> a. "Builder/Developer Board Member" means any person appointed or

> elected to serve on the board of directors of the Parent Organization[2] by the builder, developer or sponsor of the Parent Organization, and who was both a director or officer of the Parent Organization and a director, officer, employee or agent of such builder, developer, or sponsor of the Parent Organization;
>
> b. "Policy Year" means each year of the Policy Period beginning with the Policy Inception Date and ending one year thereafter and each successive year until canceled or non-renewed.
>
> 2. The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against any Builder/Developer Board Member after the end of the Policy Year in which such Builder/Developer Board Member ceases to serve on the board of directors of the Parent Organization.

[MSS 25.]

**B. The Great American Umbrella Policy**

Great American issued the Great American Umbrella Policy, The Protector Commercial Umbrella Policy No. UM 2388452, to Distinguished Properties Umbrella Managers, Inc., for the policy period of September 1, 2011 to September 1, 2013, and Certificate of Coverage No. 1481366 ("Certificate") to the HOA for the coverage period of September 21, 2011 to September 21, 2012. [MSS 5.] As an "Insured Person" and "Insured" under the Travelers Primary Policy, Gregg also qualifies as such under the Great American Umbrella Policy. [MSS 20.] The Great American Umbrella Policy "follows-form" to the Travelers Primary Policy as stated in the Great American Umbrella Policy's Claims Made Coverage Endorsement, in relevant part:

> **I. COVERAGE-CLAIMS MADE**
>
> It is agreed that the insurance afforded by this policy is subject to the same terms, conditions, definitions, exclusions and warranties as contained in the claims made policy(ies) described in the Schedule of Underlying insurance and/or Item III below.
>
> * * *
>
> **III. CLAIMS MADE CLAUSE**
>
> This policy shall apply to claims first made against the Insured and reported to

[2] "Parent Organization" is defined in the Travelers Primary Policy to mean "the organization designated in Item 1 of the Declarations," which is the HOA. [MSS 26.]

> the Company during the policy period for which coverage is provided for the following described underlying claims made policy(ies).
>
> **Insurance Company** **Policy Number**
>
> **Underlying Director & Officers Liability and/or Employee Benefits liability policy(ies) that are listed on GAI 6008 SCHEDULE OF UNDERLYING INSURANCE (SUPPLEMENTAL) and written on a claims-made basis.**

[MSS 13, RJN Ex. 4, Page 26.]

Finally, the Great American Umbrella Policy contains an endorsement setting forth the following exclusion ("Developer Wrongful Act Exclusion"):

> Any "wrongful act" which is directly or indirectly related in whole or in part to an actual or alleged "wrongful act" on the part of a builder, developer or sponsor or anyone affiliated with a builder, developer or sponsor. This exclusion shall not apply to claims while such an "Insured" is a member on the "Insured's" board of directors and in the capacity as such.
>
> As used in this endorsement, "wrongful act" means any actual or alleged error, misstatement, misleading statement, act, or omission, neglect or breach of duty.

[MSS 24.]

## IV. STANDARD FOR SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states the following standard applicable to summary judgment motions:

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Under Rule 56, the burden falls on the moving party to establish that there is no genuine issue of material fact as to the claim, cause of action or defense, or portion of a claim, cause of action, or defense, at issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986). The moving party may meet this burden by presenting evidence that, if uncontradicted, would entitle it to a directed verdict at trial. *Id*. Once Great American has met its burden, the burden then shifts to the HOA and Gregg to present specific facts showing that contradiction of Great American's evidence is possible. *British Airways Board v. Boeing Co.*, 585 F.2d 946, 950-52 (9th Cir. 1978) cert. denied, 440

U.S. 981, 99 S. Ct. 1790 (1979). However, such specific facts may not be based upon mere speculation and conjecture. *Id.* Instead, to avoid summary judgment on a cause of action, claim or defense, or portion of a claim, cause of action, or defense, the HOA and Gregg must submit admissible evidence that creates a genuine dispute as to a material fact. *Id.* In the event the Court concludes that summary judgment cannot be entered as to the entirety of the declaratory relief sought by Great American, partial summary judgment may be entered with respect to any individual cause of action or claim and/or against either Defendant.

## V. ARGUMENT

### A. Principles of Policy Interpretation

California courts follow general rules of contract interpretation in interpreting the provisions of insurance policies. *MacKinnon v. Truck Ins. Exchange,* 31 Cal. 4th 635, 647 (2003). Insurance policies are to be interpreted according to the mutual intention of the parties, which is to be inferred, whenever possible, from the written provisions of the contract. *Id.,* citing Civil Code § 1639 ("When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible… .") As stated in *MacKinnon*, "[t]he 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' controls judicial interpretation." *Id.* at 647-648 (statutory citations omitted). An insurer may rely upon a policy exclusion to deny coverage and the exclusion is enforceable to the extent it is "conspicuous, plain and clear." *Id.* at 648.

The fact that Travelers agreed to defend the HOA and Gregg in the *GIBCO* Action does not preclude Great American from relying upon the provisions of the Travelers Primary Policy to which it follows form to conclude that no excess or defense obligation can be owed under the Great American Umbrella Policy. *Shy, et al. v. Insurance Co. of the State of Penn.,* 528 Fed. Appx. 752, 754 (9th Cir. 2013) (confirming that a follow-form excess insurer is "bound by the terms of [the primary insurer's] policy, but not [the primary insurer's] coverage decision.") Great American's obligations, if any, under the Great American Policy must be evaluated according to the language contained in and incorporated by the Great American Umbrella Policy without reference to any coverage determination that may have been previously made by Travelers. This is particularly true where, as here, Travelers'

decision to defend the HOA and Gregg in the *GIBCO* Action was based upon previous pleadings containing allegations and claims for relief no longer asserted against the HOA, and without the benefit of facts and evidence now available to Great American about the timing of Gregg's tenure on the HOA's Board. As explained herein, based on the operative *GIBCO* Complaint and the evidence presently available to Great American, no defense or indemnity obligation will arise under the Great American Umbrella Policy in the event of the exhaustion of applicable limit of the Travelers Primary Policy.

**B. Great American's Obligations, if any, Cannot Attach until the Applicable Limit of the Travelers Primary Policy has been Exhausted**

As reflected in the provisions excerpted above, the Great American Umbrella Policy provides follow-form excess coverage with respect to the Directors & Officers coverage provided under the Travelers Primary Policy. As explained in *Haering v. Topa Ins. Co.,* 244 Cal. App. 4th 725, 734 (2016), "a following form excess policy generally will contain the same basic provisions as the underlying policy, with the exception of those provisions that are inconsistent with the excess policy." Further, "[a]ny inconsistency or conflict between the provisions of a following form excess policy and the provisions of an underlying primary policy is resolved by applying the provisions of the excess policy." *Id.*

California courts generally distinguish between primary and excess coverage as follows: "[p]rimary coverage is insurance coverage whereby *under the terms of the policy*, liability attaches *immediately* upon the happening of the occurrence that gives rise to liability," while excess insurance is "coverage whereby, *under the terms of the policy,* liability attaches only after a predetermined amount of primary coverage has been exhausted." *Century Surety Co. v. United Pacific Ins. Co.,* 109 Cal. App. 4th 1246, 1255 (2003) (citation omitted). In this case, any obligations that might exist under the Great American Umbrella Policy with respect to the type of Directors & Officers coverage afforded under the Travelers Primary Policy can only arise upon the exhaustion of the Travelers Primary Policy. Consequently, even if the claims asserted against Gregg in the *GIBCO* Action were potentially covered, Great American's obligations, if any, would not attach until the applicable $2 million limit of the Travelers Primary Policy exhausts through the payment of defense and/or

indemnity thereunder. Although Great American is informed and believes that Travelers has paid or has agreed to pay the balance of its policy limit in connection with the settlement of the *GIBCO* Action, Great American has not received evidence sufficient to confirm that fact.

Where primary liability insurance remains unexhausted, an excess insurer owes no obligation with respect to the defense of an insured in a lawsuit, even if the amount sought from the insured exceeds the applicable limit of primary coverage. *Signal Cos. v. Harbor Ins. Co.,* 27 Cal. 3d 359, 368 (1980). As the Travelers Primary Policy provides "burning limits" coverage, in that the applicable limits are reduced by the payment of defense fees and costs, exhaustion of the applicable limits of the Travelers Primary Policy before a judgment is entered or a settlement is reached in the *GIBCO* Action is possible. Accordingly, Great American filed this action to seek a determination that it will have no duty to defend Gregg in the *GIBCO* Action in the event such exhaustion occurs.

### C. The Duty to Defend under California Law

In the event the applicable limit of the Travelers Primary Policy is exhausted by payments made to defend and/or indemnify the HOA and/or Gregg, Great American's obligation, if any, under the Great American Umbrella Policy, could arise only if the claims asserted against the HOA and/or Gregg in the *GIBCO* Action give rise to a potential for coverage under the Great American Umbrella Policy. *Montrose Chem. Corp. v. Superior Court (Canadian Universal Ins. Co.)*, 6 Cal. 4th 287, 295 (1993) (an insurer is obligated to defend a suit which "potentially seeks damages within the coverage of the policy.") The determination of the duty to defend under California law "usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." *Id.* However, "facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy." *Id.* Conversely, "facts extrinsic to the third party complaint may obviate an insurer's defense duty," to the extent they establish that "the underlying claim cannot come within the policy coverage by virtue of the scope of the insuring clause or the breadth of an exclusion." *Id.* at 300 – 301.

Although extrinsic facts may give rise to a defense obligation, an insurer is not required to speculate about "extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at a future date." *Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th

1106, 1114 (1995). Instead, an insurer's duty to defend is determined by "the allegations on the face of the third party complaint, and from extrinsic evidence available to it at the time." *Id.* As explained herein, based on the claims asserted in the *GIBCO* Complaint, there is no potential for excess coverage for the claims asserted against the HOA in the *GIBCO* Action. Moreover, based on undisputed evidence extrinsic to the *GIBCO* Complaint, coverage is barred under the Great American Umbrella Policy for the claims asserted against Gregg under the *GIBCO* Action. As such, no obligation to assume the defense of the HOA and/or Gregg in the *GIBCO* Action could have ever arisen, even if the applicable limit of the Travelers Primary Policy had exhausted prior to the conclusion of the *GIBCO* Action.

**D. The GIBCO Action Does Not Assert a Claim Against the HOA for a Covered "Loss," and as such, No Excess Defense or Indemnity Obligation Can Arise Under the Great American Umbrella Policy**

As discussed above, GIBCO has been precluded from obtaining any relief from the HOA other than injunctive relief, declaratory relief and an award of contractual or statutory prevailing-party attorney fees in the *GIBCO* Action. Consequently, the claims asserted in the *GIBCO* Action can only be potentially covered to the extent, by virtue of those claims for relief, a covered "Loss" other than an award of damages is sought therein. As the *GIBCO* Action does not seek to recover a covered "Loss," Great American can have no duty to defend or indemnify the HOA in the *GIBCO* Action in the event the applicable limit of the Travelers Primary Policy is exhausted.

**1. An Award of Prevailing Party Attorney's Fees Does Not Constitute a Covered "Loss" under the Great American Umbrella Policy**

California courts have consistently held that awards of prevailing party attorney fees are not themselves awards of "damages" for which coverage is afforded under the insuring agreement of a liability insurance policy. *Cutler-Orosi Unified School District v. Tulare County School Dist. Liability/Property Self-Insurance-Authority*, 31 Cal. App. 4th 617, 632 (1994) (concluding that "[a]ttorney fees … are inconsistent with the concept of 'damages' as the term is used in its ordinary and popular sense, that is, compensation paid to a party for the loss or detriment suffered because of the wrongful act of another.")

As noted by the court in *Health Net v. RLI Ins. Co.*, 206 Cal. App. 4th 232, 256-257 (2012), citing *Cutler-Orosi*, "[a]n award of attorney fees does not compensate a plaintiff for the injury that brought the plaintiff into court; attorney fees are inconsistent with the meaning of the word 'Damages' in the ordinary and popular sense." The policy at issue in *Health Net* provided coverage for amounts the insured was "legally obligated to pay as Damages … resulting from any Claim … for any Wrongful Act of the Insured." The court identified certain remedies sought in the litigation, such as claims for unpaid benefits under ERISA, equitable relief and civil penalties, as not constituting damages the insured was legally obligated to pay for a "wrongful act." The court concluded that an award of prevailing party attorney fees associated with such relief would also not be covered. As explained by the court, "if the entire action alleges no covered wrongful act under the policy, coverage cannot be bootstrapped based solely on a claim for attorney fees." *Id.* at 257.

The rule articulated in *Health Net* has also been applied where, like here, a policy provides coverage for not just damages, but "Loss," defined as amounts the insured is "legally obligated to pay" including, but not limited to, "damages." *Screen Actors Guild Inc. v. Federal Ins. Co.*, 957 F. Supp. 2d 1157 (C.D. Cal. 2013) ("*SAG*"). As explained in *SAG*, "that the Policy contains a 'Loss' definition that is broader than the *Health Net* policy is irrelevant to the determination whether the claims in this case arise out of a 'Wrongful Act'" covered under the policy. In *SAG*, a federal district court concluded that an award of attorney fees was not covered when it related to an underlying injunctive order requiring the insured to comply with contractual obligations under a settlement agreement, including the distribution of funds to a class of plaintiffs. The United States Court of Appeals for the Ninth Circuit agreed. *Screen Actors Guild-American Federation of Television and Radio Artists v. Federal Ins. Co.*, 636 Fed. Appx. 409, 410 (9th Cir. 2016) ("SAG is not entitled to coverage based solely on a claim for attorney's fees untethered to any insurable loss").

Similarly, in *Big 5 Corp. v. Gulf Underwriters Ins. Co.*, 2003 WL 22127029, *3 (C.D. Cal. 2003), the court concluded that the insurer had no obligation to indemnify the insured for an award of prevailing-party attorney fees associated with a non-covered claim for unpaid overtime wages. The court distinguished a line of cases cited by *Big 5* in which awards of prevailing-party attorney fees were found to be covered, noting that the courts in each of those cases "found that the insurance

policies covered a part of the underlying claims." *Id.* Since the litigation only addressed non-covered claims for unpaid wages, the court concluded that an associated award of attorney fees was also not covered. As stated in *Big 5*, "[t]he Court is inclined to find that an award of attorneys fees cannot exist independent of a damages award." *Id.* at *3.

**2. Claims for Injunctive and Declaratory Relief Are Not Claims for Covered "Loss" under the Great American Umbrella Policy**

As set forth above, the Travelers Primary Policy defines "Loss" to mean the total amount "any Insured becomes legally obligated to pay as the result of all Claims first made against any insured during the Policy Period for Wrongful Acts including, but not limited to, damages …, judgments, settlements and Defense Costs." Generally, the phrase "legally obligated to pay" refers to "any obligation which is binding and enforceable under the law" to pay an amount, whether arising in contract or in tort. *Vandenberg v. Superior Court (Centennial Ins. Co.)*, 21 Cal. 4th 815, 840 (1999).

Except to the extent "Loss" may include amounts the HOA is required to incur in order to comply with the injunctive relief sought, or an award of attorney fees, no "amount" can be recovered from the HOA that could be construed as a "Loss" under the Great American Umbrella Policy. As the Travelers Primary Policy's Cost of Injunctive Relief Exclusion specifically bars coverage for "costs and expenses incurred or to be incurred to comply with an order, judgment or award of injunctive or other equitable relief of any kind, or that portion of a settlement encompassing injunctive or other equitable relief," the cost of the HOA's compliance with an order of injunctive relief is not a "Loss" for which coverage is afforded under the Travelers Primary Policy, or the Great American Policy, which follows form to it.

The claims for declaratory relief against the HOA in the *GIBCO* Action with respect to the rights and obligations of the parties under the CC&Rs and Design Guidelines for the Development also do not constitute claims for covered "Loss" under the Travelers Primary Policy. As there is no "amount" that the HOA can be "legally obligated to pay" in connection with a claim for declaratory relief, there is no "Loss" as defined in the Travelers Primary Policy associated with that cause of action.

### 3. Even in the Event of Primary Exhaustion, there can be No Duty to Defend Absent a Claim for a Covered "Loss"

As the term "Loss" is specifically defined to include "Defense Costs," and the Cost of Injunctive Relief Exclusion does not apply to "Defense Costs," Great American expects the HOA to contend that Great American can have an obligation to defend the HOA even absent an otherwise potentially covered "Loss" under the Great American Umbrella Policy. California law would not support such a conclusion where, as here, no otherwise potentially covered "Loss" is alleged in the *GIBCO* Action. Where, as in this case, there is no potential for indemnity, there can be no duty to defend.

The Central District of California's decision in *Big 5*, 2003 WL 22127029, at *3, is instructive on the issue. The court in *Big 5* addressed coverage-related issues with respect to an underlying action against *Big 5* in which the plaintiffs sought unpaid overtime wages and associated costs and penalties. Since, with respect to employment claims, the policy's definition of "Loss" specifically excluded amounts the insured was legally obligated to pay for unpaid wages of former employees, the court concluded that the policy in question did not afford coverage, either for the unpaid wages or an associated award of attorney fees. The court also concluded that defense fees and costs incurred by the insured were not recoverable under the policy in question. As stated by the court, "if Defendant Gulf has no responsibility to indemnify Plaintiff *Big 5* for its payment of unpaid overtime wages to the … plaintiffs, neither should it be required to indemnify Plaintiff *Big 5* of the costs of litigating the … lawsuit." *Id.*

In *Big 5,* the court concluded that "Big 5 may not recover defense costs because they are not covered by the insurer where the insurer has no obligation to indemnify the insured for compensatory damages." *Id.* at *5. According to the court, "since the [underlying] lawsuit against Plaintiff Big 5 did not involve a covered 'loss,' as discussed above, Defendant Gulf is not required to assume responsibility for Plaintiff Big 5's defense costs." In an abbreviated, unpublished, 2005 opinion, the United States Court of Appeals for the Ninth Circuit affirmed, noting, "[w]hile Loss may include damages, judgments, settlements and defenses costs, these amounts will be covered only if the underlying claims are covered." *Big 5 Corp. v. Gulf Underwriters Ins. Co.*, 136 Fed. Appx. 996, 999

(9th Cir. 2005). Although neither the district court opinion nor the Ninth Circuit opinion in Big 5 sets forth the policy's definition of "Loss," reference to the appellate briefing confirms that, similar to the definition of "Loss" in the Travelers Primary Policy, it is defined as "the total amount which the Directors and Officers become legally obligated to pay as the result of all …Designated Claims … for Wrongful Acts for which coverage applies, including but not limited to damages, judgments, settlement and Defense Costs." [Request for Judicial Notice, ¶ 8, Ex. 8, Page 9.] As such, even though "Loss" was defined to separately include "Defense Costs," the court concluded that the insured's defense fees and costs were not recoverable absent an otherwise covered "Loss" under the policy. The same conclusion is warranted in this case.

**E. The Developer Wrongful Act Exclusion Eliminates any Defense or Indemnity Obligation to Gregg under the Great American Umbrella Policy in the Event of Primary Exhaustion**

As set forth above, an endorsement in the Great American Umbrella Policy contains an exclusion barring coverage for any "wrongful act" related in whole or in part to "an actual or alleged 'wrongful act' on the part of a builder, developer or sponsor or anyone affiliated with a builder, developer or sponsor." For purposes of the endorsement, "wrongful act," is defined to include any "misstatement," which would encompass the causes of action for intentional and negligent misrepresentation asserted against Gregg in the *GIBCO* Complaint. As there is no question that Gregg is "affiliated" with the Developer Entities given his ownership interest and management of the companies, coverage is barred under this exclusion for those claims absent the application of the following exception to the exclusion:

> This exclusion shall not apply to claims while such an "Insured" is a member on the "Insured's" board of directors and in the capacity as such.

As discussed above, the misrepresentation claims asserted against Gregg are based solely upon statements allegedly made during a telephone conversation that took place on January 30, 2008. Given that Gregg's testimony and his judicial admission in his Answer confirming that he was not serving on the HOA's Board of Directors in 2008, the exception to the exclusion does not apply. Consequently, there is no genuine issue of material fact as to the application of the conspicuous, plain and clear language of the Developer Wrongful Act Exclusion to bar coverage for the claims asserted

against Gregg in the *GIBCO* Complaint. Consequently, there can be no genuine dispute that Great American cannot be obligated to defend or indemnify Gregg in the *GIBCO* Action upon the exhaustion of the applicable limit of the Travelers Primary Policy.

### F. Coverage for Gregg is Also Barred under the Travelers Primary Policy's Claims Against Builder/Developer Exclusion

Similarly, the Travelers Primary Policy, to which the Great American Umbrella Policy follows form, contains a Claims Against Builder/Developer Exclusion which clearly bars coverage for the claims asserted against Gregg in the *GIBCO* Action. Specifically, the exclusion bars coverage for "Loss" in connection with "any claim made against any Builder/Developer Board Member after the end of the Policy Year in which such Builder/Developer Board Members ceases to serve on the board of directors of" the HOA. "Builder/Developer Board Member" is defined in the endorsement as a person appointed or elected to serve on the HOA's board of directors by "the builder, developer or sponsor of the HOA, and who was both a director or officer of the [HOA] and a director, officer, employee or agent of such builder, developer, or sponsor" of the HOA. There is no dispute that Gregg, who was a principal of one or both of the Developer Defendants, was appointed to serve on the Board of Directors by one or both of the Developer Defendants, and therefore qualified as a "Builder/Developer Board Member."

As discussed above, it is also undisputed that Gregg ceased serving as a "Builder/Developer Board Member" prior to the January 30, 2008 telephone conversation at issue, and years prior to the inception of the Travelers Primary Policy. Consequently, the Claims Against Builder/Developer Exclusion clearly bars coverage for any claim made against Gregg, as a "Builder/Developer Board Member," while the Travelers Primary Policy was in effect. Based on the undisputed facts, this exclusion eliminates any potential coverage for Gregg under the Travelers Primary Policy and the Great American Umbrella Policy, which follows form to it.

Gregg may contend that because Travelers is providing a defense to Gregg under the Travelers Primary Policy, Great American cannot rely on the Claims Against Builder/Developer Exclusion in the Travelers Primary Policy to deny coverage. The fact that the Great American Umbrella Policy provides "follow form" excess coverage to the coverage provided under the Travelers Primary Policy,

however, does not bind Great American to Travelers' coverage position. *Shy,* 528 Fed. Appx. 752 at 754. Moreover, while it appears that Travelers would now have support for declining coverage to Gregg, it is possible that it may not have had sufficient extrinsic information to deny a duty to defend when the *GIBCO* Action was first tendered to conclude that the Claims Against Builder/Developer Exclusion in the Travelers Primary Policy would apply. Based on Great American's understanding of the evidence, there may not have been evidence in the *GIBCO* Action sufficient to establish that Gregg was no longer serving on the HOA's Board of Directors at the time of the January 30, 2008 telephone call until his deposition was taken in September 2016.

Now that evidence establishing the timing of Gregg's service on the HOA's Board of Directors has been presented (and the relevant facts have been admitted in Gregg's Answer), any potential for coverage that may have previously been believed to exist under the Travelers Primary Policy has been negated by the clear application of the Claims Against Builder/Developer Exclusion. Consequently, the Claims Against Builder/Developer Exclusion provides further support for Great American's denial of a duty to defend or indemnify Gregg under the Great American Umbrella Policy in the event the applicable limit of the Travelers Primary Policy exhausts.

## VI. CONCLUSION

For the reasons set forth above, Great American respectfully requests the entry of summary judgment in its favor, and against the HOA and Gregg, confirming that Great American will owe no defense or indemnity to either of them in the *GIBCO* Action under the Great American Umbrella Policy in the event of the exhaustion of the applicable limit of the Travelers Primary Policy. In the event the Court concludes that summary judgment cannot be entered as to the entirety of the relief sought by Great American, Great American requests that partial summary judgment be entered as to any cause of action, claim or duty that the Court deems to be appropriate as to either or both Defendants.

/ / /

/ / /

/ / /

/ / /

Dated: December19, 2017

TRESSLER LLP

*/S/ Linda Bondi Morrison*

By: ______________________________________

Linda Bondi Morrison, Esq.
Ryan B. Luther, Esq.
Attorneys for Plaintiff Great American Insurance Company

OC # 68382