ADLESON, HESS & KELLY, APC
Randy M. Hess (SBN 88635)
Nicole S. Adams-Hess (SBN 286632)
577 Salmar Avenue, Second Floor
Campbell, California 95008
Telephone: (408) 341-0234
Facsimile: (408) 341-0250
rhess@ahklaw.com
nhess@ahklaw.com

Attorneys for Defendant
QUINTANA HOMEOWNERS ASSOCIATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>QUINTANA HOMEOWNERS ASSOCIATION and JAMES GREGG,<br><br>Defendants. | Case No.: 5:17-cv-00693-EJD<br><br>**DEFENDANT QUINTANA HOMEOWNERS ASSOCIATION'S OPPOSITION TO GREAT AMERICAN INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Date: February 22, 2018<br>Time: 9:00 a.m.<br>Place: 280 S. First Street, Courtroom 4, Fifth Floor, San Jose, CA 95113<br>Judge: Hon. Edward J. Davila |

**TABLE OF CONTENTS**


Page

I. INTRODUCTION.......... 1

II. STATEMENT OF FACTS.......... 3

A. The Underlying Action.......... 2

1. The Allegations in the Underlying Action.......... 3

2. Settlement of the Underlying Action.......... 4

B. The Policy .......... 6

III. ARGUMENT.......... 8

A. The Applicable Legal Standard.......... 8

B. The Policy Provides Coverage to Quintana for the Claims Alleged in the Underlying Action.......... 8

1. Principles of Excess Insurance Coverage.......... 8

2. The Allegations in the Underlying Action Clearly Constitute "Claims" for "Wrongful Acts" Giving Rise to "Loss" Covered by the Policy.......... 9

3. Quintana Reasonably Expected That the Attorneys' Fees Claims Would be Covered.......... 16

4. Quintana Was Entitled to a Defense From GAIC for Gibco Partners' Claim for Non-Monetary Relief .......... 17

5. There was a Potential That Compensatory Damages Could Have Been Awarded Against Quintana.......... 19

C. There is Defense Cost Coverage for the Claims Against James Gregg.......... 19

D. GAIC Breached its Duty to Settle When it Refused to Contribute to the Settlement of the Underlying Action.......... 21

IV. CONCLUSION.......... 23

V. OBJECTIONS.......... 23


ADLESON, HESS & KELLY, APC
577 Salmar Ave., 2nd Flr
Campbell, CA 95008
(408) 341-0234
Fax (408) 341-0250
www.ahk-law.com

## TABLE OF AUTHORITIES

**Cases** **Page**

*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807 ........ 15
*Amato v. Mercury Cas. Co*. (1993)18 Cal.App.4th 1784 ........ 17
*Anderson v. Liberty Lobby, Inc.* (1986) 477 U.S. 242 ........ 8
*Anthem Electronics, Inc. v. Pacific Employers Ins. Co*. (2002) 302 F.3d 1049 ........ 20
*Big 5 Corp. v. Gulf Underwriters Ins. Co.* (2003) 2003 WL 22127029 ........ 13, 14
*Cal Farm Ins. v. TAC* (1985) 172 Cal.App.3d 564 ........ 20
*Coca Cola Bottling Co. v. Columbia Cas. Ins. Co.* (1992) 11 Cal. App. 4th 1176 ........ 9
*Cutler-Orosi Unified School District v. Tulare County School Dist.* (1994) 31 Cal.App.4th 617 ........ 14, 15
*Diamond Heights Homeowners Assn. v. National American Ins. Co.* (1991) 227 Cal.App.3d 563 ........ 22
*Garvey v. State Farm* (1989) 48 Cal.3d 395 ........ 20
*Golden Eagle Ins. Co. v. Insurance Co. of the West* (2002) 99 Cal.App.4th 837 ........ 14, 15
*Gray v. Zurich Ins. Co.* (1966) 65 Cal.2d 263 ........ 16
*Haering v. Topa Insurance Company* (2016) 244 Cal.App.4th 725 ........ 19
*Health Net, Inc. v. RLI Ins. Co.* (2012) 206 Cal.App.4th 232 ........ passim
*Howard v. American National Fire Ins. Co*. (2010) 187 Cal.App.4th 498 ........ 23
*Insurance Co. of Penn. v. City Of Long Beach* (9th Cir. 2009) 342 ........ 14, 15
*Johansen v. California State Auto. Ass'n Inter–Ins. Bureau*, *supra*, 15 Cal.3d at 16 ........ 22
*MacKinnon v. Truck Ins. Exch.* (2003) 31 Cal.4th 635 ........ 16, 21
*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.* (1986) 475 U.S. 574 ........ 8
*Montrose Chem. Corp. of Calif. v. Admiral Ins. Co.* (1995) 10 Cal.4th 645 ........ 21
*Montrose Chem. Corp. v. Superior Court* (1993) 6 Cal.4th 287 ........ 17
*North River Ins. Co. v. American Home Assurance Co.* (1989) 210 Cal.App.3d 108 ........ 8
*Northwestern Mut. Ins. Co. v. Farmers' Ins. Group, supra,* 76 Cal.App.3d at p. 1045 ........ 22
*Oeth v. Mason*, 247 Cal. App. 2d 805 ........ 19
*Powerine Oil Co. Inc. v. Sup. Ct.* (2005) 37 Cal.4th 377 ........ 21
*Screen Actors Guild Inc. v. Federal Ins. Co*. (C.D. Cal. 2013) 957 F.Supp.2d 1157 ........ 12

ADLESON, HESS & KELLY, APC
577 Salmar Ave., 2nd Flr
Campbell, CA 95008
(408) 341-0234
Fax (408) 341-0250
www.ahk-law.com

*Screen Actors Guild-American Federation of Television and Radio Artists v. Federal Ins. Co*. (9th Cir. 2016) 636 ....................12
*State Farm v. Partridge* (1973) 10 Cal.3d 94, 101 ....................20
*Teleflex Medical Incorporated v. National Union Fire Insurance Company of Pittsburgh, PA* (9th Cir. 2017) 851 F.3d 976 ....................22
*Valentine v. Aetna Ins. Co., supra,* 564 F.2d at p. 297 ....................22

**Other Authorities**

Rutter Group, California Practice Guide: Insurance Litigation. Ch. 7F-C ....................9
The Rutter Group, California Practice Guide: Insurance Litigation, Ch. 12 ....................23

**Rules**

9th Cir. Rule 36-3(a) ....................14
Fed.R.Civ.Pro 56(a) ....................8
Federal Rule of Civil Procedure Rule 56(f) ....................1, 3, 8
Northern District Civil Local Rule 52-6(b) ....................24

ADLESON, HESS & KELLY, APC
577 Salmar Ave., 2nd Flr
Campbell, CA 95008
(408) 341-0234
Fax (408) 341-0250
www.ahk-law.com

Defendant Quintana Homeowners Association ("Quintana") opposes Great American Insurance Company's ("GAIC") motion for summary judgment, or in the alternative, partial summary judgment. Quintana requests that this Court deny all relief requested by GAIC. In addition, under Federal Rule of Civil Procedure Rule 56(f), Quintana requests that this Court issue an order granting summary judgment in its favor, finding that the GAIC policy provides coverage to the claims asserted in the Underlying Action.

## I. <u>INTRODUCTION</u>

GAIC sold defendant a follow-form excess Directors & Officers liability policy covering claims for non-monetary relief for alleged breaches of duty, promising to pay Defense Costs, and the total amount ("including but not limited to" damages and settlement amounts) incurred as a result of such wrongful acts. In short, GAIC expressly promised, upon exhaustion of the primary policy by payment:

(1) to cover claims for non-monetary relief, including injunctive relief;

(2) to cover non-monetary claims for "Wrongful Acts" including breaches of duty, acts, errors, omissions, and misstatements;

(3) to pay as compensable "Loss" all "Defense Costs" any Insured becomes legally obligated to pay as a result of such non-monetary claims for "Wrongful Acts"; and

(4) to pay as compensable "Loss" the total amount any Insured becomes legally obligated to pay as the result of non-monetary claims for "Wrongful Acts".

Despite these promises, when a settlement opportunity was presented that would exceed the remaining, eroding primary policy limit, GAIC flatly refused to participate in the settlement, asserting that it owed no duty to pay Loss, whether by way of Defense Costs, damages, or settlement, because there was no underlying claim for "damages." This decision was dead wrong and in violation of GAIC's policy promises. Unlike general liability policies, D&O policies such as the one issued by Travelers and followed by GAIC *do not* require a claim for damages to trigger a duty to pay "Loss". Rather, the duty to pay "Loss" is triggered for "the total amount" any insured becomes legally obligated to pay as a result of even non-monetary claims for relief and resulting amounts the insured becomes legally

ADLESON, HESS & KELLY, APC
577 Salmar Ave., 2nd Flr
Campbell, CA 95008
(408) 341-0234
Fax (408) 341-0250
www.ahk-law.com

obligated to pay. This "total amount" includes Defense Costs and it even includes the opposing party's prevailing party attorney fees, which certainly come within the broad ambit of the policy definition of "Loss."

GAIC was required to entertain the demand for settlement that triggered its exposure, because the amounts demanded excess of the primary policy were certainly going to be covered "Loss" as that term is defined. The excess exposure was an "amount" the Insureds would become "legally obligated to pay", because the insureds would either have to proceed with trial, and incur Defense Costs in excess of the limits (covered under the GAIC policy), or they would have to pay the settlement for the prevailing party's attorney fees (the "amount" Quintana became legally obligated to pay and thus also covered under the GAIC policy).

GAIC's precipitate refusal to contribute toward either defense or settlement left its insureds with a serious decision: either reject the settlement proposal and proceed to trial, facing the risk of an adverse judgment and continuing and escalating costs of defense exceeding the primary limits without protection of the excess carrier, or agree to a known settlement amount to buy certainty and peace. The insureds were forced to settle to eliminate the risk of the unknown created by GAIC's abrogation of its policy promises.

GAIC's unreasonable interpretation of its policy to provide no coverage for Defense Costs or amounts incurred as a result of a non-monetary claim for relief all but vitiates the broad coverage for which its insured paid substantial premiums. GAIC issued to Quintana a follow form excess Directors and Officers ("D&O") policy that provided Quintana with broad liability protection for claims seeking both monetary and non-monetary relief, and its unreasonable refusal to honor those promises forced its insureds to pay out of pocket to settle the covered claims.

The unreasonableness of GAIC's position is highlighted by the fact that Quintana's primary insurer, Travelers Casualty and Surety Company of America ("Travelers") not only provided a defense to Quintana in the underlying action, but it contributed the remaining amounts left on its $2,000,000 eroding policy toward the settlement between Quintana and

ADLESON, HESS & KELLY, APC
577 Salmar Ave., 2nd Flr
Campbell, CA 95008
(408) 341-0234
Fax (408) 341-0250
www.ahk-law.com

underlying plaintiff, Gibco Partners, LLC ("Gibco Partners"), in satisfaction of its obligations to assist in settling the matter against its insured. Travelers clearly construed its policy promises in favor of coverage, while GAIC refused to honor those same policy promises adopted by way of the "follow form" coverage.

In short, GAIC forced its insureds into an impossible situation by its wrongful refusal to defend or contribute toward the settlement. Its insureds were faced with the prospect of exhausting the primary policy through defense costs and having to continue to fund the litigation with no insurer standing in their corner to defend them or indemnify them in the event of an adverse verdict. GAIC made it clear that it would not pick up the defense upon exhaustion of the primary limits, and it made clear it would not cover any amounts the insureds were compelled to pay. The expense and risk were too great for individual homeowners, and they had to cut their best deal. Quintana was compelled to put up $785,000 of individual homeowner monies over and above the $415,000 paid by Travelers in exhaustion of its limits to fund the $1,200,000 settlement with Gibco Partners.

GAIC's refusal to acknowledge coverage, even for Defense Costs for Quintana and Gregg, in the absence of a claim for "damages" is unsupported by its Policy, which covers Loss in the form of the amount its insureds became obligated to pay because of the injunctive relief claim for wrongful acts such as misstatements, errors, omissions and breaches of duty.

For the reasons set forth herein, Quintana requests that this Court deny GAIC's motion for summary judgment, and grant summary judgment to Quintana under Federal Rule of Civil Procedure Rule 56(f).

## II. <u>STATEMENT OF FACTS</u>

### A. The Underlying Action

#### 1. <u>The Allegations in the Underlying Action</u>

*Gibco Partners, LLC v. Quintana Homeowners Association, et al*., Monterey County Superior Court Case No. M114311 ("Underlying Action") alleges misstatements, misrepresentations, errors, omissions, and breaches of duty by Quintana and Gregg relating

ADLESON, HESS & KELLY, APC
577 Salmar Ave., 2nd Flr
Campbell, CA 95008
(408) 341-0234
Fax (408) 341-0250
www.ahk-law.com

to Gibco Partners' ownership and enjoyment of Lot 10 in the Quintana development in Carmel Valley, among other allegations. (GAIC RJN, Ex. 2.) In essence, Gibco Partners alleges it purchased a lot in the Quintana development that was not private and secluded as it had allegedly been promised. It further alleges the defendants failed to follow the CC&Rs and Design Guidelines as promised. (*Id*.) Gibco Partners specifically complains that the CC&Rs and Design Guidelines were not followed for many other lots in the development, including Lot 11, allegedly resulting in the approval of a building envelope that greatly diminished the Gibco Partners' ability to enjoy their lot. (*Id*.) Gibco Partners also alleges that Quintana refused to enforce the CC&Rs and the Design Guidelines, refused to produce HOA records, and violated the Corporations Code and the Davis-Stirling Act, among other wrongful acts. (*Id*.) Gibco Partners sought attorney fee and costs, injunctive relief, and declaratory relief for these alleged wrongful acts.

The allegations against Gregg stem from his alleged misstatements as a volunteer of the Board of Directors and as a committee member regarding the privacy, seclusion and nature of the Quintana development and Lot 10. (*Id*.) In addition to a conversation that underlying plaintiff had with Gregg on January 30, 2008, Gibco Partners also alleges that a review of promotional materials for Quintana gave the impression that the values and goals. (*Id*.)

2. <u>Settlement of the Underlying Action</u>

Plaintiff in the Underlying Action offered to settle with Quintana for a payment of $1,200,000 by Quintana to Gibco Partners, LLC. Gibco Partners, LLC had incurred in excess of $1,200,000 in its own attorney fee and costs in prosecuting the action against Quintana. (Declaration of Brian Call, ¶ 4.) Defense counsel recommended this reasonable settlement in light of the risks of an award of attorney fee and costs exceeding this amount and in light of the continued cost of litigation and trial should the matter fail to settle. (*Id*.)

As the proposed settlement far exceeded the remaining monies on the primary policy, GAIC, the excess carrier, was notified of the reasonable settlement offer in excess of the primary policy limits. On August 29, 2017, Quintana's counsel notified GAIC's counsel by

ADLESON, HESS & KELLY, APC
577 Salmar Ave., 2nd Flr
Campbell, CA 95008
(408) 341-0234
Fax (408) 341-0250
www.ahk-law.com

letter that Gibco Partners had made a reasonable settlement offer in excess of the primary policy. (Adams-Hess Decl., ¶ 3, Ex. A.) Quintana's counsel requested that GAIC pay the amount of the settlement in excess of the amounts paid by Travelers as obligated by the excess policy and California law. GAIC refused to contribute to the settlement. Further, GAIC refused to assume the defense. (Adams-Hess Decl., ¶ 4, Ex. B.)

When GAIC refused to defend or contribute toward the settlement, its insured Quintana had no choice but to settle the action as an economic necessity. Quintana would have quickly exhausted the remaining limits of the Travelers primary policy, and would have incurred multiples of what it paid to settle the case to continue to defend the case through trial, and if necessary, post-trial motions and appeal. Once the Travelers policy exhausted through payment of defense fees and costs, Quintana would have had to pay multiples of the amount it paid in settlement out of its own pocket in order to defend the Underlying Action through trial and if necessary, appeal. (Declaration of Brian Call, ¶ 6.)

Therefore, the Quintana homeowners were compelled to vote to fund the portion of the proposed settlement in excess of the remaining primary policy limits. Under the terms of the settlement, Travelers exhausted its primary policy limit by contributing $415,000 to the settlement. Travelers had already paid $1,585,000 in defense fees and costs incurred in the Underlying Action, and Quintana was required to pay the remaining $785,000 to settle the case. (Declaration of Brian Call, ¶ 2.) As to James Gregg, the matter resolved for a mutual release of all claims and no monetary payment. (Declaration of Brian Call, ¶ 3.)

After the agreement to settle was confirmed, Quintana's counsel again requested, by email, that GAIC contribute to the settlement, as the Travelers policy had exhausted. GAIC never responded to that email, leaving its insured to fend for itself. (Adams-Hess Decl., ¶ 5, Ex. C.) Quintana's contribution toward the settlement of the Underlying Action resulted directly from GAIC's denial of a defense. (Declaration of Brian Call. ¶ 6.)

The settlement of the Underlying Action included a release of all damages and attorney fee and costs. (Declaration of Brian Call ¶ 2, Ex. A, pp. 9-10.)

ADLESON, HESS & KELLY, APC
577 Salmar Ave., 2nd Flr
Campbell, CA 95008
(408) 341-0234
Fax (408) 341-0250
www.ahk-law.com

**B. The Policy**

GAIC issued follow form umbrella policy number UM2388452 to Distinguished Properties Umbrella Managers, Inc. for the policy period of September 1, 2011 to September 1, 2013, and issued certificate of coverage number 1481366 to Quintana for the period of September 21, 2011 to September 21, 2012. ("the GAIC Policy;" GAIC RJN, Ex. 4.) The Policy provides "follow form umbrella coverage" over several of Quintana's primary policies, including its Travelers Directors & Officers ("D&O") Liability policy. Travelers' primary D&O policy was issued under policy number 104116804, with a policy period from November 7, 2010 to November 7, 2013, with $2,000,000 in limits of liability, inclusive of defense fees and costs ("Travelers Policy"; GAIC RJN, Ex. 5, p. 142.)

GAIC's "follow form" language means that its policy provides coverage on the same terms as the primary D&O policy, except as expressly and conspicuously modified by the Policy, once the primary policy is exhausted. (*Id*.) Thus, the terms of the primary Travelers policy are controlling except where the GAIC policy expressly differs.

The Travelers Policy is an "eroding limits" policy, which means that each dollar spent on the defense of the action depletes the limits available for indemnity payments. As GAIC is a follow form umbrella policy, the following coverage grants in the Travelers Policy apply to GAIC's obligations under the Policy as well. (GAIC RJN, Ex. 3, ¶ 28.)

The Travelers' coverage grant adopted by GAIC provides:

> "The Insurer will pay on behalf of the **Insureds Loss** up to the available maximum aggregate Limit of Liability set forth in Item 3 of the Declarations which is incurred by the Insureds as the result of any **Claim** first made against the **Insureds** during the **Policy Period** or the **Discovery Period**, if purchased, for a **Wrongful Act**." (GAIC RJN Ex. 5 p. 162.)

The Travelers Policy defines the term "Claim" in pertinent part to mean: "a written demand for monetary ***or non-monetary relief***;" or "a civil proceeding commenced by the service of a complaint..." (*Id*.; emphasis added.)

ADLESON, HESS & KELLY, APC
577 Salmar Ave., 2nd Flr
Campbell, CA 95008
(408) 341-0234
Fax (408) 341-0250
www.ahk-law.com

The Travelers Policy broadly defines the term "Wrongful Act", as is customary in D&O policies:

> "**Wrongful Act** means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed or attempted, or allegedly committed or attempted, by the **Insured Organization** or by one or more **Insured Persons**, individually or collectively, in their respective capacities as such, ...." (*Id*. at p. 146.)

"Loss" is also very broadly written to include the total amount any Insured becomes legally obligated to pay as the result of a Claim for Wrongful Acts, and **it *is <u>not</u> confined* to amounts an insured is obligated to pay as damages**. The policy provides:

> "**Loss** means the total amount excess of the applicable Retention which any **Insured** becomes legally obligated to pay as the result of all **Claims** first made against any **Insured** during the **Policy Period** for **Wrongful Acts** *<u>including, but not limited to</u>*, damages (including punitive or exemplary damages where insurable under applicable law), judgments, settlements and **Defense Costs**. **Loss** does not include (1) the multiple portion of any multiple damage award, (2) criminal or civil fines or penalties imposed by law, (3) taxes, (4) any amount not indemnified by the **Insured Organization** for which the **Insured** is absolved from payment by reason of any covenant, agreement or court order, and (5) matters uninsurable under the law pursuant to which this Policy is construed." (*Id*. at p. 162, italics and underline emphasis added.)

The Travelers Policy and the GAIC Policy both include a Builder/Developer exclusion, which purports to exclude coverage for wrongful acts committed by a builder, sponsor or developer unless the insured was a member of the HOA board (GAIC RJN, Ex. 3, ¶ 25).

ADLESON, HESS & KELLY, APC
577 Salmar Ave., 2nd Flr
Campbell, CA 95008
(408) 341-0234
Fax (408) 341-0250
www.ahk-law.com

## III. ARGUMENT

### A. The Applicable Legal Standard

To succeed on summary judgment, GAIC must demonstrate it is entitled to judgment as a matter of law. (Fed.R.Civ.Pro 56(a); *Anderson v. Liberty Lobby, Inc.* (1986) 477 U.S. 242, 255.) However, all inferences to be drawn must favor the non-moving party: "On summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." (*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.* (1986) 475 U.S. 574, 587-588.)

Further, under Federal Rule of Civil Procedure 56(f), after giving notice and a reasonable time to respond, the court may also grant relief in favor of a non-moving party: "(1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not genuinely be in dispute."

Pursuant to Federal Rule of Civil Procedure 56(f), Quintana respectfully requests that this Court grant summary judgment in its favor, finding that the GAIC policy provides coverage for the claims alleged in the Underlying Action, that GAIC breached the duty to defend and settle, and that GAIC must reimburse Quintana for all amounts paid in excess of the Travelers policy.

### B. The Policy Provides Coverage to Quintana for the Claims Alleged in the Underlying Action

#### 1. Principles of Excess Insurance Coverage

"There are two levels of insurance coverage—primary and excess. Primary insurance is coverage under which liability "attach[es] to the loss immediately upon the happening of the occurrence. Liability under an excess policy attaches only after all primary coverage has been exhausted." (*North River Ins. Co. v. American Home Assurance Co.* (1989) 210 Cal.App.3d 108, 112 [internal citations omitted].) "An excess policy generally follows the form of the underlying primary coverage and is called 'following form' excess coverage, i.e., the excess has the same scope of coverage as the primary policy." (*Coca Cola Bottling Co.*

ADLESON, HESS & KELLY, APC
577 Salmar Ave., 2nd Flr
Campbell, CA 95008
(408) 341-0234
Fax (408) 341-0250
www.ahk-law.com

*v. Columbia Cas. Ins. Co.* (1992) 11 Cal. App. 4th 1176, 1182–83.)

D&O policies typically provide coverage for allegations of acts, errors, omissions, misstatements, and breaches of duty by organizations and their managing directors and officers. Coverage for allegations of monetary *and nonmonetary* relief are typically covered by such policies (See Rutter Group, California Practice Guide: Insurance Litigation. Ch. 7F-C.)

Unlike commercial general liability ("CGL") policies, which are generally confined to narrower coverage for lawsuits asserting "damages", D&O policies typically do not require an allegation of monetary damages as the trigger of coverage but only require allegation of broadly defined "Wrongful Acts." (*Id*.)

The subject Travelers Policy and its follow-form counterpart GAIC Policy do not deviate from the norm, as they broadly cover claims of non-monetary relief, and do not require any showing of damages. Indeed, the subject policies only require an allegation of a "Wrongful Act" giving rise to claims for monetary or non-monetary relief to trigger coverage. And, like their standard counterparts, the subject D&O polices broadly grant coverage for claims of *non-monetary relief* for breaches of duty, errors, omissions and misstatements, and broadly agree to pay "*the total amount*" the insured *becomes legally obligated to pay* as a result of such claims for wrongful acts, "*including but not limited to*" damages, judgments and settlements.

2. <u>The Allegations in the Underlying Action Clearly Constitute "Claims" for "Wrongful Acts" Giving Rise to "Loss" Covered by the Subject D&O Policy</u>

Without question, the explicit terms of the GAIC Policy required GAIC to provide coverage for the claims made against Quintana and Gregg in the Underlying Action upon exhaustion of the Travelers Policy. In relevant part, the coverage grant requires that GAIC pay "**Loss**", defined as "the total amount" the Insureds become legally obligated to pay as the result of a "**Claim**" for a "**Wrongful Act**." "**Loss**" "includes, *but is not limited to* damages …, judgments, settlements and '**Defense Costs'**." (GAIC RJN, Ex. 5, p. 162.) "**Wrongful**

ADLESON, HESS & KELLY, APC
577 Salmar Ave., 2nd Flr
Campbell, CA 95008
(408) 341-0234
Fax (408) 341-0250
www.ahk-law.com

**Act**" is broadly defined to include any "error, misstatement, misleading statement, act, omission, neglect, or breach of duty." (*Id*.) "**Claim**" includes a "written demand for monetary or *non-monetary relief"* and a "civil proceeding commenced by the service of a complaint..." (*Id*., emphasis added.) The terms of the GAIC policy are not in dispute. (GAIC RJN, Ex. 3.)

The Underlying Complaint seeks non-monetary relief and thus constitutes a "Claim." The Underlying Complaint includes 55 pages of allegations that Quintana committed breaches of duty, acts, errors, omissions and misstatements that include but are not limited to, Quintana's alleged allowance of "serious violations of the CC&Rs and/or Design Guidelines" (GAIC RJN, Ex. 2, ¶¶ 71- 77); Quintana's failure to bring all lots into compliance with the CC&Rs and Design Guidelines as allegedly promised (*Id*. at ¶ 79); Quintana's improperly allowing building envelopes to be relocated without the request approval or records of the same having been made (*Id*. at ¶ 81); Quintana's failure to produce books and records regarding finances, and its failure to provide meeting minutes, among other errors, all in violation of the Davis-Stirling Act and California Corporations Code (*Id*. at ¶¶ 95-103), among other alleged violations and breaches of duty. These allegations constitute alleged errors, omissions, misstatements, misleading statements, and breaches of duty. Thus, the Underlying Complaint included allegations of multiple covered "Wrongful Acts" as defined in the Travelers Policy and GAIC Policy.

As the Underlying Action included a "Claim" for a "Wrongful Act," and no exclusion conclusively precluded coverage,[1] GAIC was required to honor its promise to pay all "Loss" the insured became legally obligated to pay. The policy very broadly defines "Loss" to mean:

> **"Loss** means the total amount excess of the applicable Retention which any **Insured** becomes legally obligated to pay as the result of all **Claims** first made against any **Insured** during the **Policy**

[1] GAIC does not assert that any exclusion conclusively applies to preclude coverage for Quintana.

ADLESON, HESS & KELLY, APC
577 Salmar Ave., 2nd Flr
Campbell, CA 95008
(408) 341-0234
Fax (408) 341-0250
www.ahk-law.com

> **Period** for **Wrongful Acts** including, but not limited to, damages (including punitive or exemplary damages where insurable under applicable law), judgments, settlements and **Defense Costs**. **Loss** does not include (1) the multiple portion of any multiple damage award, (2) criminal or civil fines or penalties imposed by law, (3) taxes, (4) any amount not indemnified by the **Insured Organization** for which the **Insured** is absolved from payment by reason of any covenant, agreement or court order, and (5) matters uninsurable under the law pursuant to which this Policy is construed." (GAIC RJN, Ex. 5 at p. 162.)

"Defense Costs" means:

> "**Defense Costs** means that part of **Loss** consisting of reasonable costs, charges and expenses (including but not limited to attorney fees) incurred in defending or investigating **Claims**, including appeals therefrom. **Defense Costs** does not include salaries, wages, overhead or benefit expenses of any **Insured Person**." (*Id*. at p. 6.)

As Quintana established a "Claim" had been made against it for "Wrongful Acts," GAIC was obligated to pay "Loss."

As an initial matter, regardless whether GAIC would ultimately have had an obligation to pay other forms of Loss, such as damages, judgments or settlements, the insureds still had incurred "Loss" in the form of Defense Costs, and barring settlement, would continue to incur such Defense Costs through conclusion of the litigation. GAIC was obligated to acknowledge its duty to pay these Defense Costs upon exhaustion of the Travelers Policy, even if the claims stated in the Underlying Action were only for non-monetary (injunctive) relief. Any other reading of the policy language would nullify the GAIC Policy's explicit follow form coverage for claims for non-monetary relief. (See discussion at Section III.B.4, *infra*.)

In addition, once the policy exhausted, GAIC became obligated to pay "Loss" in the

ADLESON, HESS & KELLY, APC
577 Salmar Ave., 2nd Flr
Campbell, CA 95008
(408) 341-0234
Fax (408) 341-0250
www.ahk-law.com

form of the prevailing party's attorney fees. Prevailing party attorney fees constitute "Loss" under a D&O policy when they arise out of a covered "Wrongful Act." The sole question as to whether prevailing attorney fee awards are compensable under a D&O policy is whether they relate to a "Wrongful Act." (*See Health Net, Inc. v. RLI Ins. Co.* (2012) 206 Cal.App.4th 232 [*Health Net*]; *Screen Actors Guild Inc. v. Federal Ins. Co*. (C.D. Cal. 2013) 957 F.Supp.2d 1157, 1165, aff'd sub nom. *Screen Actors Guild-American Federation of Television and Radio Artists v. Federal Ins. Co*. (9th Cir. 2016) 636 Fed.Appx. 409 [*SAG*].)

Here, as the Complaint asserted an entitlement to an award of attorney fee and costs because of alleged breaches of obligations arising under the Corporations Code and the Stirling-Davis Act (GAIC RJN Ex. 2 p. 62) and as these alleged breaches and errors are "Wrongful Acts" as broadly defined by the follow form provisions of the GAIC Policy, the attorney fees generated to pursue non-monetary remedies for these covered "Wrongful Acts" constituted covered "Loss" under the GAIC Policy.

Notably, the GAIC Policy does not exclude coverage for prevailing party attorney fees, and indeed, such fees are clearly contemplated by the broad definition of "Loss" to include "the total amount …any Insured becomes legally obligated to pay … for Wrongful Acts…*including, but not limited to,* damages, judgments, settlements and Defense Costs." Attorney fees are just such an amount Quintana became legally obligated to pay by reason of the settlement, and would have become legally obligated to pay had the matter proceeded to trial.

Moreover, in the circumstances of this case, attorney fees are actually covered "damages", a position supported directly by *Health Net,* the Court of Appeal case cited by GAIC in its motion. In that case, the court explained that a claim for attorney fees that arises out of covered wrongful acts is itself covered. "[I]f a complaint alleges some covered wrongful acts and some acts which are not covered, *the claim for attorney fees is covered only to the extent it arises out of the covered wrongful acts.*" (*Health Net,* at 257.) Thus, the *Health Net* court determined that a prevailing party attorney fee award does constitute compensable Loss if a covered "Wrongful Act" gave rise to the plaintiff's right to attorney

ADLESON, HESS & KELLY, APC
577 Salmar Ave., 2nd Flr
Campbell, CA 95008
(408) 341-0234
Fax (408) 341-0250
www.ahk-law.com

fees. (*Id.*) While the *Health Net* court found no coverage for the attorney fees sought for the underlying claims of unpaid benefits, its finding was premised on fact that the unpaid benefits claim was not a covered "Wrongful Act". (*Id*. at 252-253.) Further, in that case, the fees and costs were not covered because, in yet another difference between the Health Net policy and the GAIC Policy, the Health Net policy specifically excluded claims for nonmonetary relief, civil penalties, or attorney fees arising out of those claims. (*Id*. at 257) No such exclusion appears in the Travelers Policy or GAIC's follow form counterpart, and, indeed, these policies embrace claims for non-monetary relief, and all amounts the insured becomes legally obligated to pay because of such non-monetary claims.

Still, the *Health Net* decision states the rule for attorney fees under D&O policies: prevailing party attorney fees tethered to a covered "Wrongful Act" constitute compensable "Loss" which must be indemnified by the insurer. (*Id*. at 257.) In the instant matter, the attorney fee prayer is tethered to the covered claims for non-monetary relief arising out of errors, omissions, misstatements and breaches of duty alleged to violate the Corporations Code and the Davis-Stirling Act. (GAIC RJN Ex. 2, ¶¶ 142-147.) As such, the attorney fee claims are covered "Loss" because they constitute an amount the insured becomes legally obligated to pay for wrongful acts. It matters not whether the attorney fees are characterized as "Damages," because they are an amount the insured has or would become legally obligated to pay.

Indeed, neither of the statutory provisions authorizing the award of attorney fees require an award of damages as a prerequisite to an award of such fees, nor does the insurance policy require an award of damages as a prerequisite to coverage for such amounts.

*Health Net* lends no support to GAIC's effort to avoid its obligation to cover Defense Costs and prevailing party attorney fee amounts in excess of the underlying limit. The other cases cited by GAIC are equally unavailing. GAIC cites *SAG*, cited above, and an unreported district court tentative ruling on a motion for summary judgment (*Big 5 Corp. v. Gulf Underwriters Ins. Co.* (2003) 2003 WL 22127029) in support of its untenable position.

ADLESON, HESS & KELLY, APC
577 Salmar Ave., 2nd Flr
Campbell, CA 95008
(408) 341-0234
Fax (408) 341-0250
www.ahk-law.com

Again, however, GAIC's supporting authority actually bolsters Quintana's right to coverage under the GAIC Policy. In *SAG*, the court agreed with the rule in *Health Net*, finding there must be a connection between a covered "Wrongful Act" and an attorney fee award in order for it to be compensable "Loss." In *SAG*, the Court held that the only alleged wrongful act was that found in an uncovered breach of contract claim. For that reason, the prevailing party attorney fees did not arise out of a covered "Wrongful Act:" (*Id*. at 1165.) Here, the underlying plaintiff sought attorney fees as result of alleged violations of the Corporations Code and the Davis-Stirling Act, for which injunctive relief was sought. The subject GAIC Policy contains no exclusion that would vitiate coverage for fees arising out of the covered breaches of duty, errors, omissions and misstatements claimed in violation of the statutory provisions.

Further, the unpublished *Big 5* decision from 2003 provides no guidance, nor is it binding or persuasive. As an initial matter, the decision should be disregarded, because unpublished dispositions issued prior to January 1, 2007 "are not precedent." (9th Cir. Rule 36-3(a).) Moreover, *Big 5* addresses whether a prevailing attorney fee award is a "Loss" under an employment practices liability policy, not a D&O policy, and thus is irrelevant to the broad coverage afforded under D&O policies. Indeed, *Big 5* predates *Health Net* but was not cited by the courts in *Health Net* or *SAG*, confirming its lack of persuasive force. (See *Big 5* at *3; *Health Net, SAG*.)

Still further, *Big 5* holds no weight in this case, because it is also founded on *Cutler-Orosi Unified School District v. Tulare County School Dist.* (1994) 31 Cal.App.4th 617 ("*Cutler-Orosi*"), a case interpreting a CGL policy, with its narrower coverage grant. And, digging deeper, *Cutler-Orosi's* reasoning is inconsistent with that of many other courts applying California law and holding that even under a CGL policy (not at issue here), prevailing party attorney fee awards are covered "damages." (*See Golden Eagle Ins. Co. v. Insurance Co. of the West* (2002) 99 Cal.App.4th 837, 850; *Insurance Co. of Penn. v. City Of Long Beach* (9th Cir. 2009) 342 Fed.Appx. 274, 277–278 (not published); *National Cas. Co. v. Coastal Development Services Foundation* (9th Cir. 2006) 171 Fed.Appx. 680, 685

ADLESON, HESS & KELLY, APC
577 Salmar Ave., 2nd Flr
Campbell, CA 95008
(408) 341-0234
Fax (408) 341-0250
www.ahk-law.com

(Not Published). "[D]epending on the language of the contract, attorney fee and costs are sometimes construed to be damages by California courts;" (*Id*.; *see also Health Net, Inc. v. RLI Ins. Co.* (2012) 206 Cal.App.4th 232, 257.)

Indeed, the determination that attorney fees should be considered "damages" is consistent with the California Supreme Court's holding in *AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, as observed by the Ninth Circuit in an unpublished decision. Holding that "damages" includes attorney fees, the court held:

> "We rely instead on an analogous decision holding that attorney's fees were "damages" within the meaning of a contractual indemnity clause, *Golden Eagle Ins. Co. v. Ins. Co. of the West,* 99 Cal.App.4th 837, 842, 121 Cal.Rptr.2d 682 (Cal.Ct.App.2002). And more generally, we rely on the principle announced by the California Supreme Court in *AIU Ins. Co.* that, when language in a policy remains ambiguous even after the expectations of the parties have been considered, the ambiguity is generally resolved in favor of coverage. *AIU Ins. Co.,* 51 Cal.3d at 822, 274 Cal.Rptr. 820, 799 P.2d 1253. Here, because the word "damages" is not defined in these policies, and cases nationwide have differed on whether it may include attorney's fees, *see Cutler-Orosi,* 31 Cal.App.4th at 631, 37 Cal.Rptr.2d 106, the term in context is not clear and explicit. **Therefore, we interpret the policies in favor of coverage for the attorney's fees as damages**." *(Insurance Co. of Penn. v. City Of Long Beach* (9th Cir. 2009) 342 Fed.Appx. 274, 277–278 (Not Published).)

Thus, there is certainly substantial authority for interpreting "damages" to include attorney fees. However, as cases interpreting "damages" under a CGL policy are neither consistent nor directly on point, given the distinctions between the coverage under a CGL policy and the broad coverage for wrongful acts under a D&O policy, the rule in *Health Net*

ADLESON, HESS & KELLY, APC
577 Salmar Ave., 2nd Flr
Campbell, CA 95008
(408) 341-0234
Fax (408) 341-0250
www.ahk-law.com

must be applied to the instant matter. The underlying plaintiff's claim for attorney fees arose out of covered "Wrongful Acts", and thus any action seeking such amounts, or any settlement resolving the claims for such amounts, comes squarely within the coverage afforded by the GAIC Policy.

3. <u>Quintana Reasonably Expected That the Attorneys' Fees Claims Would be Covered</u>

When interpreting an insurance contract, California "[c]ourts have long applied the doctrine of reasonable expectation", construing the policy to provide the protection the insured reasonably had the right to expect:

> "Not only the provisions of the [insurance] policy as a whole, but also the exceptions to the liability of the insurer, *must be construed so as to give the insured the protection which he reasonably had a right to expect,* and to that end doubts, ambiguities, and uncertainties arising out of the language used in the policy must be resolved in his favor." (Internal citations omitted.) (*Gray v. Zurich Ins. Co.* (1966) 65 Cal.2d 263, fn. 7.)

The California Supreme Court has declared "time and again" that:

> "any exception to the performance of the basic underlying [insurance] obligation must be so stated as clearly to apprise the insured of its effect. Thus, the burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language.... This rule applies with particular force when the coverage portion of the insurance policy would lead an insured to reasonably expect coverage for the claim purportedly excluded." (Internal citations and quotations omitted.) (*MacKinnon v. Truck Ins. Exch.* (2003) 31 Cal.4th 635.)

Quintana reasonably expected that its excess policy would provide coverage for the claims alleged in the Underlying Action. The GAIC Policy covers claims for both monetary

ADLESON, HESS & KELLY, APC
577 Salmar Ave., 2nd Flr
Campbell, CA 95008
(408) 341-0234
Fax (408) 341-0250
www.ahk-law.com

and non-monetary relief, and the Policy includes no exclusion for prevailing party attorney fees. Neither Travelers nor GAIC ever "clearly stated" that attorney fees associated with covered "Wrongful Acts" would not be covered. Quintana's reasonable belief in coverage was bolstered by Traveler's payment of its $2,000,000 policy limits in satisfaction of its obligations under the very same policy provisions. Quintana's reasonable expectation that its follow form excess insurer would provide coverage must be given effect.

4. Quintana Was Entitled to a Defense From GAIC for Gibco Partners' Claims for Non-Monetary Relief

The GAIC Policy, following the form of the Travelers Policy, provides separate defense cost coverage for claims for injunctive and declaratory relief. An insured need only show a "bare" potential or possibility of coverage in order to trigger an insurer's duty to defend. (*Montrose Chem. Corp. v. Superior Court* (1993) 6 Cal.4th 287, 300. The duty to defend is separate from and broader than the duty to indemnify and may arise even where coverage is ultimately found not to exist or there is no duty to indemnify. (*Id.* at 295.) "The duty to defend may even exist where coverage is questionable, and ultimately found lacking." (*Amato v. Mercury Cas. Co*. (1993)18 Cal.App.4th 1784, 1790; *Montrose, supra*, at 295.)

GAIC erroneously refused to acknowledge a defense obligation based on its conclusion that it has no defense obligation unless a covered "Loss" is alleged. (GAIC MSJ, p. 20:6-9.) This is an incorrect statement of the defense obligation adopted by GAIC's follow form policy. The defense obligation arose with allegation of a "Claim" (monetary or non-monetary relief or a complaint) for a "Wrongful Act", "even if any of the allegations are groundless, false or fraudulent." (GAIC RJN Ex. 5, p. 145.) Nowhere in the language is a defense obligation founded upon the existence of covered "Loss."

Rather, "Loss" is the amount GAIC must pay if an insured becomes legally obligated to pay because of a "Wrongful Act". A careful reading of the coverage grant should resolve any uncertainty on this point. Certainly, requiring a showing of covered "Loss" before a defense would be provided would put the cart before the horse. The duty to defend arises

ADLESON, HESS & KELLY, APC
577 Salmar Ave., 2nd Flr
Campbell, CA 95008
(408) 341-0234
Fax (408) 341-0250
www.ahk-law.com

immediately upon presentation of a "Claim" for a "Wrongful Act," and any contrary rule would nullify the defense obligation for non-monetary relief claims.

If GAIC intended that a claim for damages be a prerequisite for a defense, it should have included such a requirement in the Policy. It then would have been required to remove coverage for all claims seeking "non-monetary relief", though undoubtedly this would have made its excess policy entirely unattractive to D&O policy purchasers. Importantly, the Travelers Policy expressly broadened its coverage by endorsement to embrace within its definition of "Claim" demands for non-monetary relief. (GAIC RJN, Ex. 5, p. 162.) This endorsement, appended to the policy at inception, highlights Travelers' (and by extension, GAIC's) intent to cover demands for non-monetary relief.

GAIC's tortured reading of the policy to require a showing of "Loss" before requiring a defense to non-monetary claims defies the plain language of the policy, ignores the rule announced in *Health Net*, and would result in illusory coverage for claims seeking non-monetary relief, despite the plainly contrary intent manifested by the endorsement described above.

Finally, the exclusion for payment of the cost of the insured to comply with an order of injunctive or equitable relief confirms that a defense to injunctive relief claims is required.

> "The Insurer shall not be liable to make any payment for "Loss," ***other than "Defense Costs***," in connection with any "Claim" made against any of the "Insureds" which constitute costs and expenses incurred or to be incurred to comply with an order, judgment or award of injunctive or other equitable relief of any kind…" (GAIC RJN, Ex. 5, p. 163; emphasis added.)

This exception to the compliance costs exclusion plainly states that GAIC will pay "Defense Costs" associated with claims for injunctive or declaratory relief, even those incurred in connection with excluded claims for compliance costs. This, in itself, defeats GAIC's position that defense costs were not triggered by non-monetary claims. GAIC's position that its policy does not cover defense costs for nonmonetary claims stands in direct opposition to the actual terms of its policy. There is no question that the Policy provides coverage for Defense Costs incurred in opposing a claim for non-monetary relief.

ADLESON, HESS & KELLY, APC
577 Salmar Ave., 2nd Flr
Campbell, CA 95008
(408) 341-0234
Fax (408) 341-0250
www.ahk-law.com

5. <u>There Was a Potential That Compensatory Damages Could Have Been Awarded Against Quintana</u>

Even if this Court agreed with GAIC that a prevailing party attorney fee award is not "Loss," and that the claims for injunctive and declaratory relief do not give rise to defense coverage, GAIC still would have had the obligation to defend Quintana upon exhaustion of the Travelers Policy had this case not settled. The Court's order precluding an award of compensatory damages against Quintana was not final at the time the settlement offer was made. (GAIC RJN, Ex. 1.) An order issued on a motion to strike is interlocutory, and therefore is not generally appealable except on appeal from a final judgment. (*Oeth v. Mason*, 247 Cal. App. 2d 805, 808.) As there was a potential that the interlocutory order could either have been overturned later during the state court proceeding, or on appeal, there remained a potential for coverage for compensatory damages against Quintana.

Moreover, the order only precluded an award of damages to plaintiff. If the trial court awarded damages against Gregg at trial, Gregg likely would have sought indemnity from Quintana, as he maintains he made any statements as a volunteer and committee member of the Quintana Board of Directors. At all times prior to settlement, there was a *potential* for an award of monetary damages against Quintana.

**C. There is Defense Cost Coverage for the Claims Against James Gregg**

GAIC asserts that the Builder, Developer or Sponsor Wrongful Act exclusion in either the GAIC Policy or the Travelers Policy excuses any coverage obligation to defendant Gregg. First, the only potentially applicable exclusion is that found in the GAIC Policy, which controls as it conflicts with the similar provision of the Travelers Policy. "Any inconsistency or conflict between the provisions of a following form excess policy and the provisions of an underlying primary policy is resolved by applying the provisions of the excess policy." (*Haering v. Topa Insurance Company* (2016) 244 Cal.App.4th 725, 734.) Travelers' version of this exclusion is therefore irrelevant.

Under the GAIC exclusion, coverage is precluded for wrongful acts committed by an insured who is, or is affiliated with, a builder, developer or sponsor. However, an exception

ADLESON, HESS & KELLY, APC
577 Salmar Ave., 2nd Flr
Campbell, CA 95008
(408) 341-0234
Fax (408) 341-0250
www.ahk-law.com

to the exclusion exists for claims made while "such an 'insured' is a member on the 'Insured's' board of directors and in the capacity as such." (GAIC RJN, Ex. 4 p. 126.) GAIC cannot establish that this exclusion conclusively bars coverage for "Loss" incurred by defendant Gregg. It has long been established that the burden of proof rests with GAIC, as the insurer, to prove an exclusion applies conclusively to bar coverage. (*Garvey v. State Farm* (1989) 48 Cal.3d 395, 406.) Insurance policy exclusions must be strictly construed against the insurer, in order to provide maximum coverage to the insured. (*Cal Farm Ins. v. TAC* (1985) 172 Cal.App.3d 564, 577; *State Farm v. Partridge* (1973) 10 Cal.3d 94, 101-102.) Indeed, "[s]ummary judgment for [the insured] is required unless the insurers are able, at summary judgment stage, conclusively to negate coverage as a matter of law." (*Anthem Electronics, Inc. v. Pacific Employers Ins. Co*. (2002) 302 F.3d 1049, 1060.)

Here, at a minimum, GAIC has not proven by reference to undisputed facts that defendant Gregg's alleged wrongful acts all occurred at times when Gregg was not a member of the board of directors of Quintana, and thus, the operation of this exclusion has not been conclusively established. GAIC references a phone call between defendant Gregg and Mr. Gibson that took place on January 30, 2008, and Gregg admitted in his answer that he was not a member of the Quintana Board of Directors at that time. However, the phone call is not the only wrongful act alleged against Gregg. The Underlying Complaint includes references to a time period that plaintiff relied on materials created by Gregg and others in forming his understanding of the Quintana development; these materials form the basis for his claims of breaches of duty and misstatement and/or misrepresentation by Gregg. (See GAIC RJN, Ex. 2, ¶ 52.) As GAIC has not established conclusively that these promotions were created and viewed only after Gregg served on the Board of Directors, GAIC fails in its obligation to establish conclusively that the exclusion bars coverage.

This case never went to trial, and there was always a potential that additional facts would arise with additional evidence or clarification of the broad claims against Gregg while he served on the Quintana Board of Directors. In his deposition, Gregg asserts that he was a member of the Quintana HOA through 2007, and then he joined again in 2010 for about a

ADLESON, HESS & KELLY, APC
577 Salmar Ave., 2nd Flr
Campbell, CA 95008
(408) 341-0234
Fax (408) 341-0250
www.ahk-law.com

year. (GAIC Notice of Lodging, James Gregg Depo., p. 257:1-7.)

Further, Gibco Partners also alleges Gregg was a member of the Architectural Review Board from 2003-2013, and if he was not a member of the Board, he served as a volunteer of the Board of Directors. (GAIC RJN, Ex. 2, ¶ 6.) Although Gregg was not technically a member of the Board of Directors at the time of the alleged phone call, he remained a member of a committee of the Board of Directors, was alleged to have been a volunteer for the Board, and was acting on behalf of the Board.

The insurance policy does not define the term "Board of Directors" or "member." When a policy does not define a term, the term is given its "plain meaning" and the reasonable expectations of the insured are given effect. (*Powerine Oil Co. Inc. v. Sup. Ct.* (2005) 37 Cal.4th 377, 404.) "If the *meaning a layperson would ascribe to the language* of a contract of insurance is clear and unambiguous, a court will apply that meaning." (*Montrose Chem. Corp. of Calif. v. Admiral Ins. Co.* (1995) 10 Cal.4th 645, 666–667.) Further, insurance coverage is "interpreted broadly so as to afford the greatest possible protection to the insured." (*MacKinnon v. Truck Ins*. (2003) 31 Cal.4th 635.) Under the rules of interpretation of insurance contracts, a reasonable insured would expect that coverage for actions taken by or on behalf of the Board of Directors would extend to an individual's conduct on behalf of the Board.

For these reasons, GAIC improperly denied coverage as to Gregg, as no exclusion conclusively applied for Gregg, and a defense was required under the clear terms of the defense coverage in the GAIC Policy under its follow form provisions.

### D. GAIC Breached its Duty to Settle When it Refused to Contribute to the Settlement of the Underlying Action

An excess insurer has a duty to accept a reasonable settlement that exceeds the primary insurer's policy limits or assume the defense. Upon notice that a settlement had been agreed to in excess of the policy limits, an excess insurer has three options: (1) agree to pay the settlement; (2) reject the settlement and assume the defense, or (3) reject the settlement and subject itself to a lawsuit from its insured. (*Diamond Heights Homeowners*

ADLESON, HESS & KELLY, APC
577 Salmar Ave., 2nd Flr
Campbell, CA 95008
(408) 341-0234
Fax (408) 341-0250
www.ahk-law.com

*Assn. v. National American Ins. Co.* (1991) 227 Cal.App.3d 563, 580-581.) Under *Diamond Heights*, the insured is entitled to reimbursement from the excess insurer that rejected a settlement if the excess insurer was given an opportunity to evaluate the settlement, and the settlement was reasonable and not collusive. (*Id*.; *Teleflex Medical Incorporated v. National Union Fire Insurance Company of Pittsburgh, PA* (9th Cir. 2017) 851 F.3d 976, 979.)

Moreover, "[c]onsistent with its good faith duty, the excess insurer does not have the absolute right to veto arbitrarily a reasonable settlement and force the primary insurer to proceed to trial, bearing the full costs of defense. A contrary rule would impose the same unnecessary burdens upon the primary insurer and the parties to the action [and] …imperils the public and judicial interests in fair and reasonable settlement of lawsuits....' " (*Valentine v. Aetna Ins. Co., supra,* 564 F.2d at p. 297; see *Northwestern Mut. Ins. Co. v. Farmers' Ins. Group, supra,* 76 Cal.App.3d at p. 1045, 143 Cal.Rptr. 415.)

Under established California law, the insurer has a duty to accept reasonable settlement offers. The insurer may not consider coverage issues in evaluating the reasonableness of the offer. "Such factors as the limits imposed by the policy, a desire to reduce the amount of future settlements, *or a belief that the policy does not provide coverage*, should not affect a decision as to whether the settlement offer in question is a reasonable one." (Emphasis added.) (*Johansen v. California State Auto. Ass'n Inter–Ins. Bureau*, *supra*, 15 Cal.3d at 16.) An insurer's good faith (but erroneous) belief in noncoverage is no defense to liability flowing from its refusal to accept a reasonable settlement demand: "An insurer who denies coverage does so at its own risk, and although its position may not have been entirely groundless, if the denial is found to be wrongful, it is liable for all the detriment caused by the insurer's breach of the express and implied obligations of the contract." (*Id.* at 15-16.)

Under an eroding policy, the duty to settle early is clear. "The longer the case is litigated, the lower the indemnity limits available to the injured party and the greater the risk of an excess judgment. While this fact may not affect the 'reasonableness' of a third party

ADLESON, HESS & KELLY, APC
577 Salmar Ave., 2nd Flr
Campbell, CA 95008
(408) 341-0234
Fax (408) 341-0250
www.ahk-law.com

settlement demand, it arguably could increase the insurer's duty to settle as early as possible." (The Rutter Group, California Practice Guide: Insurance Litigation, Ch. 12; see also *Howard v. American National Fire Ins. Co*. (2010) 187 Cal.App.4th 498, 524.) Having rejected a reasonable settlement offer under an eroding limits policy, GAIC is now liable for the entirety of the settlement and all other damage proximately caused by its breach of the duty to settle.

The settlement between Quintana and Gibco Partners was reasonable as the exposure at trial exceeded the settlement amount. (Declaration of Brian Call ¶ 4.) At the time of the settlement, plaintiff's attorney fees exceeded $1,200,000. (*Id*.) Had the case proceeded to trial, and Quintana lost, it would have had a judgment against it for attorney fees exceeding $1,200,000, and these amounts would have been supported under the Davis-Stirling Act and the Corporations Code. (*Id*.)

In addition to the serious risk of a verdict in excess of $1,200,000, the underlying action has been, and would have continued to be, very expensive to defend. At the time of the settlement, Travelers had paid in excess of $1,500,000 to defend its insureds. (*Id*. at ¶ 2.) This amount would have continued to increase significantly through trial and beyond. Settlement of the case was the only prudent option, which is why the Quintana homeowners agreed to a significant special assessment in order to fund the settlement after GAIC abandoned them. (*Id*. at ¶ 6.)

## IV. CONCLUSION

Quintana respectfully requests that this Court deny GAIC's Motion for Summary Judgment or Partial Summary Judgment. Under Federal Rule of Civil Procedure Rule 56(f), Quintana requests that this Court issue an order granting summary judgment in its favor, finding that the GAIC policy provides coverage to the claims asserted in the Underlying Action.

## V. OBJECTIONS

1. Quintana objects to all references made by GAIC insinuating that Travelers would have denied a defense and indemnity if it had been aware of the State Court's June

ADLESON, HESS & KELLY, APC
577 Salmar Ave., 2nd Flr
Campbell, CA 95008
(408) 341-0234
Fax (408) 341-0250
www.ahk-law.com

25, 2015 order on Quintana's Motion to Strike. (GAIC RJN, Ex. 1.) GAIC has no personal knowledge of this speculative statement, and it is not true. Travelers issued an amended reservation of rights letter on August 21, 2017, over two years after the subject Court Order, continuing to affirm defense and indemnity coverage, and paid its limits in settlement on behalf of Quintana. Travelers was well aware of the Court order when it made these decisions, and determined that it still owed a defense and indemnity obligation to Quintana. (Adams-Hess Decl., 2).

2. Quintana objects that GAIC violated Northern District Civil Local Rule 52-6(b), which requires the moving party to meet and confer with the nonmoving party to create a joint statement of undisputed facts. GAIC's counsel did not confer with Quintana prior to the filing of its Summary Judgment Motion. (Adams-Hess Decl., 7.)

3. Quintana objects to GAIC's Disputed Facts 10, 11, and 12 in GAIC's separate statement as to relevance. The subject policy does not restrict itself to a duty to pay "damages", and "damages" are not synonymous with "Loss" under the policy. Rather, the policy contains an agreement to pay "Loss," which refers to the total *amount* the insured shall become legally obligated to pay, "including but not limited to" damages, settlements, and judgments. Therefore, this fact is not relevant to the claim to be adjudicated, as it does not eliminate all "amounts" allowable as covered Loss under the GAIC policy.

4. Quintana objects to GAIC's Disputed Fact 16 on the grounds of relevance. The cited exclusion relates to costs and expenses incurred to comply with an order or settlement encompassing injunctive or other equitable relief. No such amounts have been claimed in the underlying action.

Respectfully submitted,

Dated: January 17, 2018

ADLESON, HESS & KELLY, APC

By: ______________________________
Randy M. Hess
Nicole S. Adams-Hess
Attorneys for Defendant
Quintana Homeowners Association

ADLESON, HESS & KELLY, APC
577 Salmar Ave., 2nd Flr
Campbell, CA 95008
(408) 341-0234
Fax (408) 341-0250
www.ahk-law.com