UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| GREAT AMERICAN INSURANCE COMPANY, | Case No. 5:17-cv-00693-EJD |
|---|---|
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S RULE 56(F) MOTION** |
| v. | |
| QUINTANA HOMEOWNERS ASSOCIATION, et al., | Re: Dkt. No. 52 |
| Defendants. | |

I. INTRODUCTION

Plaintiff Great American Insurance Company ("GAIC") initiated this declaratory relief action seeking a judicial determination that it does not owe Defendants Quintana Homeowners Association ("Quintana HOA") and James Gregg ("Gregg") a duty to defend or indemnify in the underlying suit entitled GIBCO Partners, LLC v. Quintana Homeowners Association, et al., that was pending in the Monterey County Superior Court, but has settled. Presently before the Court is GAIC's motion for summary judgment, or in the alternative, partial summary judgment. The Quintana HOA opposes the motion and seeks summary judgment in its favor pursuant to Rule 56(f), Fed.R.Civ.P. Gregg does not oppose GAIC's motion. The motions were heard on February 22, 2018. For the reasons set forth below, GAIC's motion is granted as to Gregg and denied as to the Quintana HOA, and Quintana HOA's motion is denied.

## II. BACKGROUND

A. Underlying Action

The plaintiff in the underlying action, GIBCO Partners, LLC ("GIBCO Partners"), is the purchaser of "Lot 10," a 91.5 acre plot of land located within a 2,070 acre development in Carmel Valley known as Quintana. Prior to purchasing the property, GIBCO Partners' manager, Jonathan Gibson ("Gibson") reviewed Quintana's Covenants, Conditions and Restrictions ("CC&Rs"), the Design Guidelines of Quintana, and the maps of the Quintana lots contained in each of these documents. Based upon the information contained therein, Gibson determined that the "building envelopes" (the area of each lot in Quintana in which all residential improvements must be built) could only be changed in one of three specified ways: (1) the Architectural Review Board ("ARB") could make the changes without formally amending the Design Guidelines if certain findings were made; (2) the ARB could make changes if it received the vote or written consent of no less than seventy-five percent (75%) of the Quintana HOA; or (3) the developer, Twelfth Tee, could make changes. Golf Properties, LLC ("Golf Properties") is the managing member of Twelfth Tee.

On January 30, 2008, prior to purchasing Lot 10, Gibson had a telephone conversation with Gregg, who was identified in the complaint as a developer of Quintana with an ownership interest in Twelfth Tee, a member of the Quintana HOA Board from 2003-2011, and a member of the ARB from approximately 2003-2013. Based on this conversation, Gibson believed that Gregg was the key person to contact at Quintana to obtain information and guidance about whether he should purchase Lot 10. GIBCO Partners allegedly relied upon the information Gregg provided, as well as the representations in the CC&Rs, the Design Guidelines and maps, in concluding that Lot 10 would provide Gibson and his family the privacy they desired, when it decided to purchase Lot 10 for $2.75 million on February 28, 2008.

GIBCO Partners alleged that the information Gregg provided was false and misleading. Further, GIBCO Partners alleged that throughout 2009, 2010 and 2011, the Quintana HOA and

ARB allowed multiple violations of the CC&Rs to exist on eight of the thirteen lots in the Quintana development, including among other things, building envelope violations. GIBCO Partners alleged that it notified the ARB and the Quintana HOA of the violations and was promised that the CC&Rs would be enforced. The Quintana HOA and ARB, however, allegedly failed to fulfill their promise. Instead, in approximately June of 2012, the Quintana HOA president asked the lot owners to approve a series of amendments to the Design Guidelines which would eliminate several of the violations, and the ARB promised to approve a few of the violations for some of the lot owners if those lot owners voted to approve the Design Guideline revisions. Ultimately, the amendments to eliminate several of the longstanding violations received enough votes to pass, and the ARB approved most of the remaining violations.

GIBCO Partners filed suit against the Quintana HOA and Gregg in September of 2011 in the Monterey County Superior Court, asserting claims relating to GIBCO Partners' purchase of Lot 10. In June of 2015, the Superior Court ruled that GIBCO Partners may not assert a claim for damages against the Quintana HOA. MSS 9-11. Gregg's deposition in the underlying action was taken in September of 2016. His testimony confirmed that he was one of the initial members of the Board of Directors for the Quintana HOA, but was no longer serving in that capacity in 2008 when he had the telephone conversation with Gibson.

In April of 2017, GIBCO Partners obtained leave to file the operative complaint, the Amended Revised Sixth Amended Complaint, which added, in pertinent part, allegations that Gregg was a "volunteer" for the Quintana HOA. The operative complaint included the following claims pertinent to the instant insurance coverage action: breach of contract against the Quintana HOA for failure to enforce the CC&Rs and Design Guidelines, for which GIBCO Partners seeks injunctive relief and an award of attorney's fees; fraud and negligent misrepresentation against Gregg, acting in the capacity of "a volunteer on behalf of the HOA," for which GIBCO Partners seeks damages, including punitive damages, as well as attorney fees; violation of California Corporations Code §§8320, 8321, 8333 against the Quintana HOA, for which GIBCO Partners

seeks injunctive relief and attorney fees; violation of the Davis-Stirling Act, California Civil Code §§1363, 1363.05, 1365 and 1363.840, for which GIBCO Partners seeks injunctive relief and attorney fees; and declaratory relief against the Quintana HOA with respect to an alleged building envelope violation on Lot 11, and attorney fees.

Quintana HOA and Gregg (collectively "Insureds") received a defense in the underlying action from Quintana HOA's primary insurer, Travelers Casualty and Surety Company of America ("Travelers") under a primary liability insurance policy issued to Quintana HOA ("Travelers Policy"). In February of 2017, Quintana HOA's excess carrier, GAIC, issued letters denying any obligation to defend and indemnify Quintana HOA and Gregg in the event the Travelers policy was exhausted.

GIBCO Partners offered to settle with the Quintana HOA for $1,200,000.[1] Travelers agreed to pay what remained of its $2,000,000 eroding policy to settle the case, which was estimated at the time to be approximately $450,000. In August of 2017, the Quintana HOA's counsel notified GAIC of the settlement offer and Traveler's agreement to contribute to the settlement. The Quintana HOA requested that GAIC pay $750,000 of the proposed settlement. When GAIC refused to contribute toward the settlement and denied any duty to defend, the Quintana HOA felt it had no choice but to settle the action out of economic necessity. Under the terms of the settlement, Travelers paid what remained of its policy ($415,000) and the Quintana HOA paid the remaining $785,000. The settlement included a release of all damages and attorney fees and costs. As to Gregg, the action settled for a mutual release of all claims and no monetary payment. After the agreement to settle was confirmed, the Quintana HOA's counsel again requested that GAIC contribute to the settlement. GAIC never responded.

B. The Coverage Action

Shortly after declining coverage and prior to the settlement of the underlying case, GAIC

---

[1] GIBCO Partners had incurred in excess of $1,200,000 in attorney fees and costs in prosecuting the underlying action.

Case No.: 5:17-cv-00693-EJD
ORDER GRANTING IN PART AND DENYING IN PART GAIC'S MOTION FOR SUMMARY JUDGMENT; DENYING QUINTANA HOA'S RULE 56(F) MOTION

4

initiated the instant action in February of 2017 seeking a judicial declaration that it has no obligation under the umbrella liability policy it issued to the Quintana HOA ("Umbrella Policy") to defend and indemnify the Quintana HOA and Gregg upon exhaustion of the Travelers Policy. The GAIC Umbrella Policy provides "Claims Made Coverage" for the coverage period of September 21, 2011 to September 21, 2012, and contains a limit of $5 million for each occurrence and a $5 million general aggregate limit. The GAIC Umbrella Policy provides "follow form umbrella coverage" over the Travelers Policy, and accordingly the coverage in the Travelers Policy applies to GAIC's obligations under its Umbrella Policy.

Before the underlying case settled, the Quintana HOA answered and counterclaimed for breach of contract based upon GAIC's failure to defend and indemnify; breach of the implied covenant of good faith and fair dealing based upon GAIC's allegedly unreasonable (1) refusal to pay defense costs for the underlying action after the Travelers Policy was exhausted, (2) failure to accept the settlement offer in the underlying action, (3) failure to conduct a full, fair and thorough investigation, (4) failure to give the Quintana HOA at least as much consideration as its own interests, (5) failure to diligently search for and consider evidence that would have supported payment of defense costs and settlement; and (6) misrepresentation of the insurance policy terms and declaratory relief.

Gregg also filed an Answer, admitting that he was a member of the Board of Directors and an officer for the Quintana HOA, but indicating that he did not hold such positions as of January 30, 2008. MSS 31. Gregg was, however, a member of the Quintana Architectural Review Board at that time. RJN Ex. 6, ¶17.

Travelers Policy

The Travelers Policy contains the following Liability Coverage Insuring Agreement relevant to GAIC's alleged obligations under the GAIC Umbrella Policy:

**Liability Coverage**
A. The Insurer will pay on behalf of the Insureds Loss up to the available maximum aggregate Limit of Liability set forth in Item 3 of the Declarations which is incurred by the Insured as the result of

Case No.: 5:17-cv-00693-EJD
ORDER GRANTING IN PART AND DENYING IN PART GAIC'S MOTION FOR SUMMARY JUDGMENT; DENYING QUINTANA HOA'S RULE 56(F) MOTION
5

any Claim first made against the Insureds during the Policy Period
or the Discovery Period, if purchased, for a Wrongful Act.

Request for Judicial Notice[2] ("RJN") Ex. 5, p. 23. The Travelers Policy provides the following regarding defense coverage:

**Defense Coverage**
B. The Insurer shall have the right and duty to defend any Claim covered by this Policy, even if any of the allegations are groundless, false or fraudulent. The Insurer's duty to defend shall cease upon the exhaustion of the Limit of Liability set forth in Item 3 of the Declarations.

RJN Ex. 5, p.6. A "Claim" is defined to mean "a written demand for monetary or non-monetary relief." GAIC RJN Ex. 5, p. 161. "Loss" is defined to mean, in relevant part, the total amount "any Insured becomes legally obligated to pay as the result of all Claims first made against any Insured during the Policy Period for Wrongful Acts including, but not limited to, damages (including punitive or exemplary damages where insurable under applicable law), judgments, settlements and Defense Costs." GAIC's Moving Separate Statement ("MSS") 14. The Travelers Policy defines "Wrongful Acts" to mean "any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed or attempted, or allegedly committed or attempted," by the Quintana HOA or one or more Insured Persons "in their representative capacities as such." MSS 15. Gregg is an "Insured Person" and "Insured" under the Travelers Policy. The Travelers Policy contains two endorsements that are relevant to the coverage dispute: an exclusion for the cost of injunctive relief ("Cost of Injunctive Relief Exclusion"); and an exclusion regarding Builder/Board Members ("Claims Against Builder/Developer Exclusion"). MSS 16, 25.

GAIC Umbrella Policy

The GAIC Umbrella Policy issued to Quintana HOA, and Gregg qualifies as an "Insured Person" and "Insured" under that Policy. The GAIC Umbrella Policy incudes an endorsement setting forth an exclusion for any "wrongful act" on the part of a builder, developer, sponsor or

---

[2] GAIC's Request for Judicial Notice is granted.

Case No.: 5:17-cv-00693-EJD
ORDER GRANTING IN PART AND DENYING IN PART GAIC'S MOTION FOR
SUMMARY JUDGMENT; DENYING QUINTANA HOA'S RULE 56(F) MOTION

anyone affiliated with a builder, developer or sponsor ("Developer Wrongful Act Exclusion"). MSS 24.

### III. STANDARDS

A motion for summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). The moving party bears the initial burden of informing the Court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the moving party meets this initial burden, the burden shifts to the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); Celotex, 477 U.S. at 324. The court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324. However, the mere suggestion that facts are in controversy, as well as conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment. See Thornhill Publishing Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979). To meet this burden, the non-moving party must come forward with admissible evidence. Fed. R. Civ. P. 56(c); see also, Hal Roach Studios, Inc. v. Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990).

A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. Anderson, 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L.Ed.2d 202; Barlow v. Ground, 943 F.2d 1132, 1134-36 (9th Cir. 1991). Conversely, summary judgment must be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

Rule 56(f), Fed.R.Civ.P., provides that "[a]fter giving notice and a reasonable time to respond, the court may" grant summary judgment in favor of the nonmovant, grant the motion on grounds not raised by the party, or consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

## IV. DISCUSSION

A liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity. Montrose Chemical Corp. v. Superior Court, 6 Cal.4th 287, 295 (1993) (quoting Gray v. Zurich Insurance Co., 65 Cal.2d 263 (1966)). "Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded. [Citations.]" Montrose, 6 Cal.4th at 295 (quoting Horace Mann Ins. Co. v. Barbara B., 4 Cal.4th 1076, 1081 (1993)).

A. "Exhaustion" of Travelers Policy

Generally, the primary insurer alone owes a duty to provide and bear all costs of the defense. Diamond Heights Homeowners Assn. v. National American Ins. Co., 227 Cal.App.3d 563, 577(1991). "The excess carrier has no right or duty to participate in the defense, absent contract language to the contrary, until the primary policy limits are exhausted." Id.

It is undisputed that the Travelers Policy must be exhausted before GAIC's coverage attaches. According to the Quintana HOA, the Travelers Policy was exhausted as part of the settlement of the underlying action. GAIC does not respond directly to the Quintana HOA's exhaustion argument. GAIC Reply, p.5. Instead, citing to Signal Cas. v. Harbor Ins. Co., 27 Cal.3d 359, 368 (1980), GAIC contends that its alleged duty to defend or pay defense costs is now moot in light of the settlement. In Signal, exhaustion of the primary insurance policy and settlement of claims occurred simultaneously. The Signal court accordingly held that the excess insurance carrier was not liable for defense costs incurred by the primary carrier prior to the settlement. Like the excess carrier in Signal, GAIC is not liable for defense costs incurred before

Case No.: 5:17-cv-00693-EJD
ORDER GRANTING IN PART AND DENYING IN PART GAIC'S MOTION FOR SUMMARY JUDGMENT; DENYING QUINTANA HOA'S RULE 56(F) MOTION

8

the Travelers Policy was exhausted upon settlement of the underlying action.

The issue remains, however, whether GAIC's duty to defend or indemnify arose when Travelers committed what remained of its Policy to the proposed settlement, thereby effectively exhausting the Travelers Policy. The Signal case does not address this issue. Further, because the Quintana HOA has counterclaimed for breach of contract, among other things, the issue is not rendered moot by the settlement, notwithstanding GAIC's assertion to the contrary. Whether GAIC had a duty to defend or indemnify upon exhaustion of the Travelers Policy depends upon the terms of the Travelers Policy and the GAIC Umbrella Policy, which are discussed below.

B. Whether GIBCO Partners' Claim for Injunctive Relief is a "Claim" Within the Meaning of the Insurance Policies

The Superior Court issued a ruling in the underlying action barring GIBCO Partners from asserting claims for damages. Therefore, at the time of the proposed settlement of the underlying action, GIBCO Partners was limited to claims for injunctive relief and attorney fees. The Travelers Policy, which GAIC is bound by, defines "Claim" to mean "a written demand for monetary or non-monetary relief." GAIC RJN Ex. 5, p. 161. It follows that the Superior Court's ruling limiting GIBCO Partners to non-monetary claims did not bar coverage.

C. Whether the Cost of Injunctive Relief Exclusion Bars Coverage of Defense Costs

As set forth previously, the Travelers Policy defines "Loss" to mean the total amount "any Insured becomes legally obligated to pay as the result of all Claims first made against any insured during the Policy Period for Wrongful Acts including, but not limited to, damages . . . judgments, settlements and Defense Costs." GAIC contends that the claims for declaratory relief against the Quintana HOA do not constitute claims for a covered "Loss," because there is no "amount" that the Quintana HOA can be "legally obligated to pay" in connection with the declaratory relief claims. GAIC's Motion, p. 19. More specifically, GAIC contends the Travelers Policy's Cost of Injunctive Relief Exclusion bars coverage. The Quintana HOA counters that it incurred a "Loss" in the form of "Defense Costs," and if it had not entered into the settlement with GIBCO Partners,

it would have continued to incur "Defense Costs" through the conclusion of the underlying litigation. The Quintana HOA contends that GAIC was obligated to acknowledge its duty to pay for future Defense Costs upon exhaustion of the Travelers Policy.

GAIC's interpretation of the Cost of Injunctive Relief Exclusion is unpersuasive. The Cost of Injunctive Relief Exclusion provision includes an exception for "Defense Costs" associated with claims for injunctive or declaratory relief as follows:

> The Insurer shall not be liable to make any payment for Loss, other than Defense Costs, in connection with any Claim made against any of the Insureds which constitute costs and expenses incurred or to be incurred to comply with an order, judgment or award of injunctive or other equitable relief of any kind, or that portion of a settlement encompassing injunctive or other equitable relief . . . .

MSS 16. Therefore "Defense Costs" are a covered "Loss," even if the "Defense Costs" are incurred in connection with a claim for non-monetary relief, such as the claims made by GIBCO Partners. The Cost of Injunctive Relief Exclusion does not bar coverage of Defense Costs.

D. Whether Prevailing Party Attorney Fees Are a Covered "Loss"

GAIC contends that prevailing party attorney fees are not a covered "Loss," citing Big 5 Corp. v. Gulf Underwriters Ins. Co., No. 02-3320 WJR, 2003 WL 22127029, at *3 (C.D. Cal. July 14, 2003) (insured not entitled to recover attorney fees and defense costs associated with loss that was not covered under policy); see also Cutler-Orosi Unified School District v. Tulare County School Dist. Liability/Property Self-Insurance-Authority, 31 Cal.App.4th 617, 632 (1994) (concluding "[a]ttorney fees therefore are inconsistent with the concept of 'damages' as the term is used in its ordinary and popular sense"); Health Net v. RLI Ins. Co., 206 Cal.App.4th 232, 256-57 (2012) (attorney fees are inconsistent with the meaning of the word damages in the ordinary and popular sense); Screen Actors Guild-American Federation of Television and Radio Artists v. Federal Ins. Co., 636 Fed.Appx. 409, 410 (9th Cir. 2016) ("SAG") (SAG not entitled to coverage based solely on a claim for attorney's fees untethered to any insurable loss).

Here, GIBCO Partners' claims for non-monetary damages gave rise to a potential "Loss"

Case No.: 5:17-cv-00693-EJD
ORDER GRANTING IN PART AND DENYING IN PART GAIC'S MOTION FOR
SUMMARY JUDGMENT; DENYING QUINTANA HOA'S RULE 56(F) MOTION
10

in the form of prevailing party attorney fees. As discussed previously, the Travelers Policy defines "Loss" to mean the total amount "any Insured becomes legally obligated to pay as the result of all Claims." The California Corporations Code and the Davis-Stirling Act both authorize the award of prevailing party attorney fees. See Cal. Corp. Code §§8323, 8337; Cal. Civil Code §5975(c). Thus, at the time the Quintana HOA was evaluating the proposed settlement, the Quintana HOA faced the potential of becoming legally obligated to pay attorney fees either by reason of the settlement of the underlying action, or alternatively after losing at trial on the merits.

The cases relied upon by GAIC are distinguishable. In Big 5 Corp., supra, the parties disputed whether an underlying claim for unpaid wages that resulted in a settlement was covered under the insurance policy at issue. The court held that the underlying claim for wages was not a covered loss under the policy, and it followed that the insured was not entitled to recover the settlement nor the associated attorney fees and costs. Big 5 Corp. v. Gulf Underwriters Ins. Co., 2003 WL 22127029, at *3. In contrast, the GIBCO Partners' declaratory relief claims are covered "Claims" under the terms of the Travelers Policy. The Cost of Injunctive Relief Exclusion does not bar declaratory relief claims; rather this provision limits the amount of "Loss" recoverable on such claims.

GAIC's reliance on Cutler-Orosi, supra, and Health Net, supra, is also misplaced. In both of these cases, the policies at issue required the insurers to pay all sums which the insured became legally obligated to pay as "Damages." Here, the Travelers Policy provides broader coverage, requiring the insured to pay "the total amount . . . any Insured becomes legally obligated to pay as the result of all Claims."

The insurance policy at issue in SAG, supra, was similar to the Travelers Policy in this case insofar as it provided coverage for "Loss." Nevertheless, the SAG decision does not lend support for GAIC's position. In SAG, the insured organization was sued in an underlying action for failure to distribute foreign royalties to its members. The parties reached a settlement which required the insured organization to pay the foreign royalties to its members. The insured

Case No.: 5:17-cv-00693-EJD
ORDER GRANTING IN PART AND DENYING IN PART GAIC'S MOTION FOR
SUMMARY JUDGMENT; DENYING QUINTANA HOA'S RULE 56(F) MOTION
11

organization also agreed to pay an enhancement payment to the named plaintiff and an award of attorney fees and costs totaling $330,000. The insured organization requested reimbursement from its insurer for the $330,000. The Ninth Circuit determined that the insured organization had a pre-existing obligation to pay the foreign royalties to its members, and therefore its failure to honor that obligation was not a covered "Loss" resulting from a wrongful act. SAG, 636 Fed.Appx. at 410. In contrast, GIBCO Partners' Amended Revised Sixth Amended Complaint included not only claims against the Quintana HOA to enforce arguably pre-existing contractual duties, but also claims for "wrongful acts" such as violations of the Davis-Stirling Act and California Corporations Code for which GIBCO Partners sought prevailing party attorney fees. In sum, GAIC has not established that prevailing party attorney fees are not a covered "Loss."

GAIC next contends that the Quintana HOA's claim for prevailing party attorney's fees is moot because the underlying suit has been settled and dismissed. The Quintana HOA, however, has asserted counterclaims against GAIC for, among other things, breach of contract and breach of the implied covenant of good faith and fair dealing, which require resolution of the coverage issues.

E. Gregg

With respect to Gregg, GAIC alleges that it has no obligation to defend and indemnify due to the application of the Developer Wrongful Act Exclusion in the GAIC Umbrella Policy, or alternatively the Builder/Developer Exclusion in the Travelers Policy. Gregg filed a Notice of Non-Opposition to the motion.

The GAIC Umbrella Policy contains an endorsement setting forth the following exclusion for a "wrongful act":

> Any "wrongful act" which is directly or indirectly related in whole or in part to an actual or alleged "wrongful act" on the part of a builder, developer or sponsor or anyone affiliated with a builder, developer or sponsor. This exclusion shall not apply to claims while such an "Insured" is a member on the "Insured's" board of directors and in the capacity as such.
>
> As used in this endorsement, "wrongful act" means any actual or

Case No.: 5:17-cv-00693-EJD
ORDER GRANTING IN PART AND DENYING IN PART GAIC'S MOTION FOR SUMMARY JUDGMENT; DENYING QUINTANA HOA'S RULE 56(F) MOTION

12

> alleged error, misstatement, mispleading statement, act, or omission, neglect or breach of duty.

MSS 24. The undisputed evidence shows that Gregg was "affiliated" with the developer and not serving on the Quintana HOA's Board of Directors at the time he allegedly made misrepresentations. Therefore coverage for Gregg is barred by the exclusion in the GAIC Umbrella Policy cited above.

The Travelers Policy contains an endorsement setting forth the following definitions and exclusions regarding a Builder/Board Member:

> 1. For purposes of this endorsement, the following terms have the following meanings:
>
> a. "Builder/Developer Board Member" means any person appointed or elected to serve on the board of directors of the Parent Organization by the builder, developer or sponsor of the Parent Organization, and who was both a director or officer of the Parent Organization and a director, officer, employee or agent of such builder, developer, or sponsor of the Parent Organization.
>
> b. "Policy Year" means each year of the Policy Period beginning with the Policy Inception Date and ending one year thereafter and each successive year until canceled or non-renewed.
>
> 2. The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against any Builder/Developer Board Member after the end of the Policy year in which such Builder/Developer Board Member ceases to serve on the board of directors of the Parent Organization.

MSS 25. Gregg was not serving as a "Builder/Developer Board Member" at the time he allegedly made misrepresentations. Therefore, coverage for Gregg is also barred by the Travelers' Builder/Developer exclusion.

//

//

//

//

Case No.: 5:17-cv-00693-EJD
ORDER GRANTING IN PART AND DENYING IN PART GAIC'S MOTION FOR SUMMARY JUDGMENT; DENYING QUINTANA HOA'S RULE 56(F) MOTION

13

## V. CONCLUSION

For the reasons set forth above, GAIC's motion for summary judgment is GRANTED as to Gregg, and DENIED as to the Quintana HOA. The Quintana HOA's Rule 56(f) is denied as premature.

**IT IS SO ORDERED.**

Dated: February 27, 2018

EDWARD J. DAVILA
United States District Judge